UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN J. LYNGAAS, D.D.S.,

       Plaintiff,

                                      Case No. 22-cv-10830

v.                                   Honorable Linda V. Parker

SOLSTICE BENEFITS, INC. and
JOHN DOES 1-5,

       Defendants.

_____/

## OPINION AND ORDER (1) DENYING PLAINTIFF'S MOTION TO CERTIFY CLASS (ECF NOS. 116, 128); (2) DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NOS. 144, 146); (3) DENYING AS MOOT PLAINTIFF'S MOTION TO STAY (ECF NO. 149); AND DENYING AS MOOT PLAINTIFF'S (ECF NO. 154) AND DEFENDANT'S (ECF NO. 163) MOTIONS TO STRIKE

This is a putative class action lawsuit filed under the Telephone Consumer

Protection Act ("TCPA").  The action arises from a single, one-page fax sent on

behalf of Defendant Solstice Benefits, Inc. ("Solstice") to dental providers,

including Plaintiff Brian J. Lyngaas, D.D.S., P.L.L.C. ("Plaintiff"), on or about

April 23, 2018.

The matter is presently before the Court on Plaintiff's motion to certify a

class (ECF Nos. 116 [redacted], 128 [sealed]), motions by Plaintiff (ECF No. 154)

and Solstice (ECF No. 163) to strike certain evidence submitted in support of or in

opposition to the class certification motion, Solstice's summary judgment motion

(ECF Nos. 144 [sealed], 146 [redacted]), and Plaintiff's motion to stay briefing on the summary judgment motion pending a decision on class certification (ECF No. 149). All of the motions, except Solstice's dispositive motion, are fully briefed. Finding the facts and legal arguments adequately presented in the parties' briefing, the Court is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f).

For the reasons set forth herein, the Court is denying Plaintiff's motion for class certification. As the Court found it unnecessary to rely on the evidence the parties seek to strike when deciding Plaintiff's class certification motion, it is denying as moot the parties' motions to strike that evidence. Finally, for the reasons explained below, the Court is denying without prejudice Solstice's dispositive motion.

First, Solstice asserts arguments in response to Plaintiff's class certification motion reflecting that it has additional grounds supporting summary judgment than what is raised in its pending motion. However, the Local Rules for the Eastern District of Michigan prohibit a party from filing more than one summary judgment motion without leave of court. *See* E.D. Mich. LR 7.1(b)(2). The Court seeks to avoid yet another motion and round of briefing in this litigation for Solstice to request leave, when the Court is already inclined to grant it, particularly as Plaintiff

never responded to the initial motion and the deadline for dispositive motions has not passed.

Second, when filing the pending dispositive motion, Solstice did not comply with the District's Electronic Filing Policies and Procedures, particularly Rule 19. *See* E.D. Mich. LR 5.1(d); https://www.mied.uscourts.gov/.  While Solstice's exhibits in support of the motion are properly filed as individual attachments to the motion and supporting brief, there is no index of exhibits, and each exhibit is not accompanied by an exhibit identifier on the docket.[1]  Solstice also did not comply with the instruction that "[f]iling users . . . shall not include any paper that is already part of the record.  Previously filed papers should be referenced using the PageID (see R6)."  *See* Elec. Filing Policies & Proc. R19(a).  Thus, for example, citations to a deposition transcript already filed on the docket must be to that filing instead of clogging the docket with multiple copies of the same transcript. Because these defects impair the Court's efficient review of the record, had the Court noticed them when the motion was first filed, it would have stricken the filing.

---

[1] A sample of the correct filing of exhibits is provided in the rule.

I.    **Factual & Procedural Background**

A.    **The Parties**

Plaintiff is a dental practice in Livonia, Michigan, owned by Brian J.

Lyngaas, D.D.S. (ECF No. 116-10 at PageID.5017; ECF No. 1 at PageID.3 ¶ 9.)

Solstice is a licensed insurance company which provides dental and vision benefits

to groups, employers, and individuals throughout the United States. (ECF No.

140-1 at PageID19500-01 ¶ 3.)

B.    **Solstice's Provider Network & Network Lease Arrangements**

Solstice maintains a provider network comprised of dentists and dental

practices that participate with Solstice networks and agree to accept members on

associated plans ("in network" dentists or providers). (*Id*. at PageID.19501 ¶ 4.)

By using in-network providers, plan members obtain benefits at lower rates. (*Id*. at

¶ 5.)

The providers in Solstice's network have either contracted with Solstice

directly, or they contracted with other dental insurance companies or dental

provider networks with which Solstice has entered a Network Access Arrangement

(or "network lease"). (*Id*. at PageID.19502 ¶ 11.) The latter providers agreed in

their contracts with those insurance companies or dental provider networks to

participate in plans and networks offered by other dental insurance companies that

have entered into network leases with their insurers or networks. (*Id*.) Solstice has

4

entered network leases with United Concordia Companies, Inc. ("UCCI") and PPO USA, Inc. (now known as GEHA Solutions, Inc.) ("GEHA").  (*Id.* at ¶ 12; *id.* at PageID. 19505 ¶ 22; *see also* ECF Nos. 131, 143.)

Solstice and UCCI entered their Network Access Arrangement on July 1, 2016.  (ECF No. 140-1 at PageID. 19502 ¶ 12; *see also* ECF No. 143.)  Pursuant to this network lease, UCCI granted Solstice access to the providers on its United Concordia Advantage Plus Dental network for use in Solstice's PPO dental benefit plans.  (ECF No. 140-1 at PageID.19502-03 ¶ 13.)  Thus, participants in Solstice's PPO dental benefit plans have access on an in-network basis to providers that contract directly with UCCI.  (*Id.* at PageID.19503 ¶ 14.)  Solstice and GEHA entered their network lease on January 1, 2014, which grants Solstice access to the providers on GEHA's CONNECTION Dental Network for use in Solstice's PPO dental benefit plans.  (ECF No.140-1 at PageID.19505 ¶¶ 22, 23; ECF No. 131.)

Plaintiff entered a Participating Dentist Agreement ("PDA") with UCCI on December 3, 2009.  (ECF No. 140-6 at PageID. 20139-40, 20141, Resp. Nos. 26-27; ECF No. 140-7; *see also* ECF No. 140-8.)  Pursuant to the PDA, Plaintiff became a participating provider in several UCCI plans.  (ECF No. 116-10 at PageID.5002-03.)  Plaintiff also agreed to participate "in any other plan, program or arrangement for which [UCCI] has agreed to provide access to the Network ('Network Access Arrangements')[,]" and "specifically authorize[d] [UCCI] to

5

enter into Network Access Arrangements and agree[d] to provide services to Members enrolled under any Network Access Arrangement, subject to all of the terms and conditions of [the PDA]."  (ECF No. 140-8 at PageID.20247 ¶ 2.)  One of those conditions was "agree[ing] to accept communications from [UCCI] via . . . facsimile . . .."  (*Id.* ¶ 1(d).)

The PDA provides that a list of all currently effective network leases are listed on UCCI's website.  (*Id.*)  Plaintiff acknowledges being a provider on a network lease to Solstice.  (ECF No. 116-10 at PageID.5002-03.)

Solstice manages its provider network, offers various benefit plans that utilize different aspects of the Solstice provider network(s), processes claims submissions, and makes participating providers known to plan members through provider directories and Solstice's website.  (ECF No. 140-1 at PageID.19501-02 ¶ 8.)  Solstice's provider database includes providers it contracts with directly and providers who contracted with a dental insurance company or dental provider network with which Solstice has entered a Network Access Agreement.  (*Id.* at PageID.19502 ¶ 11.)  The database contains the information Solstice uses to communicate with in-network providers, including their telephone fax numbers.  (*Id.* ¶ 10.)  Plaintiff has been listed in Solstice's provider directory as a participating provider in the Solstice PPO plan since at least 2017.  (*Id.* at PageID.19503 ¶ 16; *see also id.* at PageID. 19509, 19512-13.)

6

Providers contracting directly with Solstice supply Solstice with their fax telephone numbers and other information on various forms, including contracts and credentialing applications. (*Id.* at PageID.19506 ¶ 28.) For providers contracting with other dental insurance companies and dental provider networks with a Network Access Agreement with Solstice, Solstice receives a provider directory, which includes this information, from the insurer or network pursuant to the network lease. (*See id.* at PageID.19503 ¶ 16.) Plaintiff's information, including its fax telephone number, was included in the provider directory UCCI transmitted to Solstice pursuant to their network lease. (ECF No. 140-1 at PageID.19503 ¶ 16.)

## C.    The Subject Fax

On April 23, 2018, Solstice, through a web-based platform owned by WestFax, sent a one-page fax targeted at providers participating in at least one of the following Solstice plans: Solstice PPO, DHMO-500B, Discount Plan-Plus One, and Discount Plan-Plus Compete. (*Id.* at PageID.19507 ¶ 31.) The fax informed the providers of a new group, National Association for Medical and Dental, Inc. and Healthcare National Marketing, Inc. ("NAFMD"), which had chosen Solstice as its carrier for the dental benefits administration of those plans. (*Id.*; *see also* ECF No. 1-1 at PageID.18.)

7

Solstice sent the fax in response to complaints from NAFMD that its members were being turned away by providers Solstice leased from UCCI and/or GEHA.  (*See* ECF No. 121 at PageID.7886-87.)  NAFMD's members were being told that the provider did not take the particular Solstice plan, did not accept Solstice at all, or was not aware of Solstice.  (*Id.*)  Plaintiff received the fax on a traditional fax machine, which automatically prints the message onto paper.  (ECF No. 116-10 at PageID.5177-78; *see also* ECF No. 134 at PageID.19217-18 ¶¶ 21-24.)  There also are online fax services that allow users to receive and read faxes, without the use of a telephone line, by e-mail or by logging into a website.  (ECF No. 134 at PageID.19218-19 ¶¶ 25-29.)

Solstice generated a list of the targeted providers from reports produced from its database of in-network providers participating in at least one of the plans NAFMD selected.  (ECF No. 140-1 at PageID.19507 ¶ 32.)  The list initially contained 86,758 lines of information, which included telephone fax numbers associated with the in-network providers.  (ECF No. 124 at PageID.8044-45; *see also id*. at PageID.8140-9985.)  A little more than a third of the fax numbers (33,162) were removed from the list because they were invalid or duplicative.  (*See* ECF No. 134 at PageID.19215 ¶ 16.)  Of the 53,596 remaining numbers on the list, WestFax reported that 46,348 faxes were "sent" on April 23, 2018, while 7,248 attempts "failed."  (*Id.*)  The next day, a second attempt was made to 3,700 of the

7,248 previous failed attempts.  (*Id*.)  3,362 of those retries "failed" again; 338 were "sent."  (*Id*.)  Thus, Solstice's fax was "sent" to 46,686 recipients between April 23 and 24.

### D.     The Lawsuit

As indicated, the subject fax was sent to and received by Plaintiff.  Claiming that Solstice violated the TCPA by sending this "unsolicited advertisement," Plaintiff filed this putative class action lawsuit on April 18, 2022.  (ECF No. 1.)  In the Complaint, Plaintiff defines the putative class as "[a]ll persons sent one or more facsimiles from Solstice on any date after April 17, 2018, advertising the commercial availability or quality of property, goods, or services." (*Id.* at PageID.8.)  After extensive discovery, which closed on July 23, 2024, Plaintiff filed its pending motion for class certification pursuant to Federal Rule of Civil Procedure 23.  (ECF Nos. 116, 128.)

In its opening brief in support of the motion, Plaintiff proposes the following Class:

> All persons and entities: (1) sent a one-page
> announcement to their fax number on April 23 or April
> 24, 2018, stating, "Solstice is happy to announce that . . .
> The National Association for Medical and Dental,
> Inc./Healthcare National Marketing, Inc. has selected us
> as their carrier," "This group has over 25,000 members,"
> and "We look forward to continuing to promote your
> practice through our growing membership base!"; (2)
> whose fax number was included on a provider list
> Solstice obtained through a network agreement with

United Concordia Companies, Inc. or GEHA, Inc.; and (3) regarding which Solstice has produced no evidence of contact prior to April 23, 2018.

"Evidence of contact" means (a) that one or more providers using the fax number had a contract with Solstice before April 23, 2018, as identified on a spreadsheet bearing Bates number SOLSTICE000206 or otherwise identified in correspondence produced by Solstice at SOLSTICE000790-020940; or (b) that one or more providers using the fax number submitted a claim to Solstice for services rendered before April 23, 2018, as identified on a spreadsheet of claims data bearing Bates number SOLSTICE000759 or otherwise identified in correspondence produced by Solstice at SOLSTICE000790-020940. All such persons and entities, and their fax numbers, have been removed and are excluded from the class. Furthermore, the class does not include: (1) Solstice, or any parent, subsidiary, affiliated, or controlled person, or its attorneys, officers, directors, agents, servants, or employees, or the immediate family members of such persons; (2) the named counsel in this case or employees of their offices or firms; or (3) the judges assigned to this case or any member of their staff. The class also will exclude each member who timely and validly requests exclusion, as directed by the Court.

(ECF No. 116 at PageID.4941-42 (footnote omitted).)  In reply, to address some of the evidence and challenges Solstice raises in its response brief, Plaintiff proposes a change to the meaning of "evidence of contact" in the Class definition, thereby expanding the persons and entities excluded from the Class:

"Evidence of contact" means (a) that one or more providers using the fax number had a contract with Solstice before April 23, 2018, as identified on a spreadsheet bearing Bates numbers SOLSTICE000206,

SOLSTICE000337, SOLSTICE000339, a spreadsheet attached as Appendix 5 to the Declaration of Margaret Daley, or otherwise identified in correspondence produced by Solstice at SOLSTICE000790-020940; or (b) that one or more providers using the fax number (i) submitted a claim to Solstice for services rendered before April 23, 2018, as identified on a spreadsheet of claims data bearing Bates number SOLSTICE000758 or SOLSTICE000759, (ii) submitted a verification form before April 23, 2018, as identified on a spreadsheet bearing Bates number SOLSTICE000779, or (iii) were otherwise identified in correspondence produced by Solstice at SOLSTICE000790-020940. All such persons and entities, and their fax numbers, have been removed and are excluded from the class.

(ECF No. 155 at PageID.22488.)

Solstice has moved for summary judgment, arguing that the fax does not qualify as an "advertisement" under the TCPA because it does not "promote goods or services to be bought or sold." (ECF Nos. 144, 146.) Plaintiff, having moved to stay briefing on Solstice's motion pending a decision on class certification, did not file a response brief. As indicated, the parties also have moved to strike certain evidence submitted in support of or in opposition to Plaintiff's class certification motion. Specifically, Solstice has moved to strike the declaration of Plaintiff's counsel, David Oppenheim (ECF No. 155-1). (ECF No. 163.) Plaintiff seeks to strike the following declarations:

- Matthew Bryan (GEHA) (ECF No. 132);
- Robert Mitchell (UCCI) (ECF 133);
- Tina Canalejo-Hiller (Smile Design Dentistry) (ECF 140-12);
- Farid Blanco (Blanco Jamis Dental Group, P.A.) (ECF 140-13);

11

- Annie Infante (Razar Dental Group) (ECF 140-14);
- Siamak Rafieian (Palm Harbor Dental) (ECF 140-15);
- Rocio Quicuti (Landent DMD, PA) (ECF 140-16);
- Michael Mills (Michael P. Costabile, DMD) (ECF 140-17);
- Rocio Quicuti (Sheridan Dental Care) (ECF 140-18);
- Marietta Del Ray (Oasis Dental Associates, P.A.) (ECF 140-19); and
- Margaret Daley, dated November 21, 2024, along with supporting records (ECF 137, 140-27).[2]

(ECF No. 154.)

## II.    The TCPA

As relevant here, the TCPA prohibits "[the] use [of] any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless [certain circumstances apply]."  47 U.S.C. § 227(b)(1)(C).  One of those circumstances is an "established business relationship" between the sender and recipient.

The statute defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services, which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise."  *Id*. § 227(a)(5).  An "established business relationship" is defined as:

> [A] prior or existing relationship formed by a voluntary
> two-way communication between a person or entity and
> a business or residential subscriber with or without an

---

[2] Solstice also submitted Daley's expert report, which Plaintiff has not challenged. (*See* ECF No. 134.)

> exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party.

47 C.F.R. § 64.1200(f)(6); *see also* 47 U.S.C. § 227(a)(2).

## III.    Applicable Legal Standard & Analysis

### A.    Rule 23's Requirements

As the Sixth Circuit has advised, "class actions represent a significant departure from 'our constitutional tradition of individual litigation'"; they "are the exception, not the rule[.]" *In re Ford Motor Co.*, 86 F.4th 723, 725 (2023) (quoting *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016)). Class actions are the exception because "exponential aggregation of claims and parties magnifies the stakes of litigation and can thus have massive ramifications for plaintiffs and defendants alike." *Id.* at 725-26 (citing *Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 834 (7th Cir. 1999)). "To ensure appropriate use of this potent litigation device, Federal Rule of Civil Procedure 23 serves as a gatekeeper to class certification." *Id.* at 726.

Thus, the rule "does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The party moving for class certification bears the burden of "affirmatively demonstrate[ing]" its satisfaction of Rule 23's prerequisites, *id.*, by "offer[ing] 'significant' evidentiary proof[,]" *In re*

*Ford Motor Co.*, 86 F.4th at 726.  The reviewing court's "analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim[.]'"  *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013) (quoting *Dukes*, 564 U.S. at 351).  However, merit questions may be considered only to the extent relevant to Rule 23's prerequisites for certification. *Id.* at 466 (citations omitted).

Plaintiff seeks certification of a class under Rule 23(b)(3).  Thus, Plaintiff must satisfy the requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Plaintiff must also show "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

The Sixth Circuit has held that "Rule 23(b)(3) classes must also meet an implied ascertainability requirement."  *Sandusky Wellness Ctr., LLC v. ASD*

14

*Specialty Healthcare, Inc.*, 863 F.3d 460, 466, 471 (6th Cir. 2017) (citing *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016)); *see also Tarrify Props., LLC v. Cuyahoga Cnty.*, 37 F.4th 1101, 1105-06 (6th Cir. 2022) (quoting *Sandusky Wellness Ctr.*, 863 F.3d 466).  Putative class members must be "readily identified based on the class definition." *Tarrify Props.*, 37 F.4th at 1106.  "A 'class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class.'" *Id.* (quoting *Sandusky Wellness Ctr.*, 863 F.3d at 471).  "If 'mini-trials' become necessary to determine who is in and who is out, the class-action vehicle imposes inefficiencies rather than ameliorates them." *Id*. (citing *Sandusky Wellness Ctr.*, at 471-74).

As Plaintiff offers (ECF No. 116 at PageID.4942), "[c]lass certification is normal in litigation under [the TCPA], because the main questions, such as whether a given fax is an advertisement, are common to all recipients[,]" *Ira Holtzman, C.P.A. & Assocs. Ltd. v. Turza*, 728 F.3d 681, 684 (7th Cir. 2013).  Nevertheless, courts often deny certification in TCPA matters, including where individualized determinations to assess who is in the class predominate over common questions and/or the class is not feasibly ascertainable. *See, e.g., Sandusky Wellness Ctr.*, 863 F.3d at 468-69; *Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162 (S.D. Ind. 1997); *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400 (E.D. Pa. 1995); *Brian J. Lyngaas,*

*D.D.S., P.L.L.C. v. IQVIA, Inc.*, No. 20-2370, 2024 WL 3360653 (E.D. Pa. July 9,

2024); *Sawyer v. KRS Biotech., Inc.*, No. 1:16-cv-550, 2018 WL 4214386 (S.D.

Ohio Sept. 5, 2018); *Lindsay Transmission, LLC v. Office Depot, Inc.*, No. 4:12-cv-

221, 2013 WL 275568 (E.D. Mo. Jan. 24, 2013); *Sadowski v. Med1 Online, LLC*,

No. 07 C 2973, 2008 WL 489360 (N.D. Ill. Feb. 20, 2008); *G.M. Sign, Inc. v.*

*Franklin Bank, S.S.B.*, No. 06 C 949, 2007 WL 4365359 (N.D. Ill. Dec. 13, 2007);

*Levitt v. Fax.com*, No. 05-949, 2007 WL 3169078 (D. Md. May 25, 2007).  The

present case presents comparable—if not identical—challenges to certification.

 The third element of Plaintiff's proposed class definition excludes persons

and entities who received the subject fax for "which Solstice has produced no

evidence of contact prior to April 23, 2018."  (ECF No. 116 at PageID.4941-42.)

This "no evidence of contact" requirement is similar or substantively identical to

an element of the proposed class definitions in *Lindsay Transmission*, *Sadowski*,

and *G.M. Sign*.  *See Lindsay Transmission*, 2013 WL 275568, at *3 (including

individuals sent the subject text "with whom Defendant does not have an

established business relationship"); *Sadowski*, 2008 WL 489360, at 3 (defining the

class as persons "with respect to whom defendant cannot provide evidence of

express consent or an established business relationship prior to the transmission of

the faxes"); *G.M. Sign*, 2007 WL 4365359, at *1 (seeking certification of class of

persons who received fax "for whom [the defendant] cannot provide evidence of

prior express permission or invitation for the sending of such messages").  It poses an obstacle to class certification for the reasons discussed in those cases.

Most significantly, identifying which individuals and entities receiving the fax had prior "contact" with Solstice would require fact-intensive, individualized inquiries.  This is made obvious by Plaintiff's shifting definition of "evidence of contact" between its initial motion and reply briefs to account for further evidence of contact between Solstice and Plaintiff's listed putative class members and Solstice's asserted deficiencies in the class definition.  The modification resulted in Plaintiff's removal of thousands of putative class members.

There are a myriad of ways for Solstice to evidence contact, aside from those included in Plaintiff's initial and current definitions, as Solstice has shown through concrete evidence.[3]  Solstice has done more than raise a mere possibility that members of the class as defined by Plaintiff consented to receiving the challenged fax.  Thus, this case is more like *Sandusky Wellness Center* than *Bridging Communities, Inc. v. Top Flite Financial, Inc.*, 843 F.2d 1119 (6th Cir. 2016), which Plaintiff cites.

This matter also is distinguishable from *Bridging Communities* and cases cited by Plaintiff where the defendant purchased a list of individuals or entities to

---

[3] It is not only the alternative avenues for showing contact that is problematic, but also that even one of Plaintiff's recognized methods—providers that submitted claims to Solstice before April 23, 2018—requires case-by-base investigation.

fax or hired a professional fax service company to send the fax to contacts in the

company's database, and the defendant had no connection to those individuals or

entities.  In those cases, these facts "suggest[ed] a class-wide absence of consent."

*Bridging Cmtys.*, 843 F.3d at 1122 (fax advertising company sent fax on behalf of

the defendant to fax numbers on a list the advertising company purchased); *see*

*also, e.g., Lyngaas v. Curaden Ag*, 992 F.3d 412, 418 (6th Cir. 2021) (defendant

purchased a target list of thousands of dental professionals' fax numbers to send

toothbrush advertisement); *Siding & Insulation Co. v. Beachwood Hair Clinic,*

*Inc.*, 279 F.R.D. 442, 443-44, 446 (N.D. Ohio 2012) (finding "no questions of

individualized consent" where defendant purchased list of 16,000 fax numbers

from InfoUSA and hired another third-party, B2B, and "presented no evidence that

it had established business relationships with any" of the recipients).  As Plaintiff

concedes, all of the recipients of the subject fax were Solstice in-network

providers.  (ECF No. 116 at PageID.4953, 4959-60.)  This raises far more than "the

possibility" that they consented to being contacted by Solstice, including by

facsimile.

Identifying "who is in and who is out" would require Solstice to provide any

evidence it has regarding its relationship to each potential class member and the

Court's evaluation of that individualized evidence.  This "would result in the exact

'myriad mini-trials' that Rule 23(b)(3) seeks to prevent."  *Sandusky Wellness Ctr.,*

863 F.3d at 470 (quoting *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 329 (5th Cir. 2008)).  There is no "administratively feasible" way to ascertain class membership.  Further, the issue of consent clearly predominates over common issues to the class.

For these reasons, the Court is denying Plaintiff's motion for class certification.

## IV.    Conclusion

In summary, the Court **DENIES** Plaintiff's motion for class certification (ECF Nos. 116, 128).  As the Court found it unnecessary to rely on the evidence which the parties seek to strike in reaching its decision, it **DENIES AS MOOT** the parties' motions to strike (ECF Nos. 154, 163).  The parties may reassert their challenges to the evidence if it is offered at a later date in the litigation.  For the reasons discussed at the start, the Court **DENIES WITHOUT PREJUDICE** Solstice's summary judgment motion (ECF Nos. 144, 146); therefore, Plaintiff's motion to stay briefing on the motion (ECF No. 149) is **DENIED AS MOOT**.

**SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 18, 2025

19