**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| BRIAN J. LYNGAAS, D.D.S., P.L.L.C., individually and on behalf of all others similarly-situated,<br><br>Plaintiff,<br><br>v.<br><br>SOLSTICE BENEFITS, INC. and JOHN DOES 1-5,<br><br>Defendants. | Case No. 22-cv-10830<br><br>Hon. Linda V. Parker<br><br>Hon. Curtis Ivy, Jr. |

**DEFENDANT SOLSTICE BENEFITS, INC.'S MOTION**
**FOR SANCTIONS UNDER RULE 11 AND 28 U.S.C. § 1927**

Defendant Solstice Benefits, Inc. ("Solstice") moves, pursuant to Federal Rule of Civil Procedure 11(b) and 28 U.S.C. § 1927, for entry of an order imposing sanctions against Plaintiff Brian J. Lyngaas D.D.S., P.L.L.C., the law firms of Bock Hatch & Oppenheim, LLC and Shenkan Injury Lawyers, PLLC, and their attorneys, for the filing and continued pursuit of the Complaint alleging violations of the federal Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005, 47 U.S.C. § 227 (hereinafter "TCPA"), in the amount of Solstice's attorneys' fees and costs incurred in this action, including those incurred in connection with the instant Motion.

In accordance with Local Rule 7.1(a), on July 20, 2026, counsel for Solstice

conferred with counsel for Plaintiff by telephone in which the nature of the motion and its legal basis was explained, but did not obtain Plaintiff's concurrence on the relief sought.

WHEREFORE, Defendant requests that this Court grant its Motion and enter an Order imposing sanctions against Plaintiff Brian J. Lyngaas D.D.S., P.L.L.C. and the law firms of Bock Hatch & Oppenheim, LLC and Shenkan Injury Lawyers, PLLC, and their attorneys.

Dated: October 7, 2026

GREENSPOON MARDER LLP

/s/ *Jeffrey A. Backman*
Jeffrey A. Backman
Roy Taub
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
954.491.1120 (Telephone)
954.343.6958 (Facsimile)
jeffrey.backman@gmlaw.com
roy.taub@gmlaw.com

SMITH HAUGHEY RICE & ROEGGE, PC
Kristen E. Guinn P72148
100 Monroe Center NW
Grand Rapids, MI 49503
(616) 458-6245 (Telephone)
(616) 774-2461 (Facsimile)
kguinn@shrr.com

*Attorneys for Defendant*
*Solstice Benefits, Inc.*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| BRIAN J. LYNGAAS, D.D.S., P.L.L.C., individually and on behalf of all others similarly-situated,<br><br>Plaintiff,<br><br>v.<br><br>SOLSTICE BENEFITS, INC. and JOHN DOES 1-5,<br><br>Defendants. | ) | Case No. 22-cv-10830<br><br>Hon. Linda V. Parker<br><br>Hon. Curtis Ivy, Jr. |

**BRIEF IN SUPPORT OF DEFENDANT SOLSTICE BENEFITS, INC.'S MOTION FOR SANCTIONS UNDER RULE 11 AND 28 U.S.C. § 1927**

## STATEMENT OF THE ISSUES PRESENTED

1. Whether sanctions should be imposed under Rule 11 where Plaintiff filed and continued to pursue a frivolous complaint alleging violations of the Telephone Consumer Protection Act ("TCPA") despite the subject fax clearly failing to meet the statutory definition of an "advertisement," evidenced perhaps most starkly by Plaintiff's constantly-evolving (and uniformly baseless) theories of liability.

2. Whether sanctions are mandated under Rule 11 where Plaintiff filed and continued to pursue a frivolous complaint alleging violations of the TCPA asserting that the fax was unsolicited despite providing prior express permission and maintaining an established business relationship with Solstice, a relationship Plaintiff now concedes (only after many years of costly litigation) it had with Solstice before the subject fax.

3. Whether sanctions are required under 28 U.S.C. § 1927 as a result of Plaintiff's counsel causing the multiplication of vexatious litigation by continuing to litigate a frivolous claim.

**CONTROLLING OR MOST APPROPRIATE AUTHORITY**

1. Fed. R. Civ. P. 11
2. 28 U.S.C. § 1927
3. *Bojicic v. DeWine*, 145 F.4th 668 (6th Cir. 2025)
4. *King v. Whitmer*, 556 F. Supp. 3d 680 (E.D. Mich. 2021)
5. *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609 (6th Cir. 2010)
6. *Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368 (6th Cir. 1996)
7. *Sandusky Wellness Center, LLC v. Medco Health Solutions, Inc.*, 788 F.3d 218, 222 (6th Cir. 2015)

# PRELIMINARY STATEMENT

Two questions have permeated this lawsuit from the start of the case: what makes the fax message at issue an advertisement, and was it unsolicited? After all, the Telephone Consumer Protect Act, 47 U.S.C. § 227 ("TCPA"), prohibits only the sending of unsolicited advertisements, not any and all faxes that are sent. Federal Rule of Civil Procedure 11 requires an attorney to conduct a reasonable investigation of the factual and legal grounds for a lawsuit *before* filing the complaint, and in this case Plaintiff and his lawyers – who focus on TCPA fax putative class actions – had nearly four years from the date of the fax message to investigate before filing suit (they filed suit five days before the four year statute of limitations period ran). The result of their "inquiry"? A conclusory allegation that the fax message is an advertisement that parroted the statutory definition in the TCPA, and an incorrect (and easily refuted) assertion that Plaintiff had no contractual relationship with Defendant Solstice Benefits, Inc. ("Solstice").

This case should never have been filed. Plaintiff had no good faith basis to claim the Fax Message advertised anything to Plaintiff, and Plaintiff and his counsel could have easily discerned, in the three years and 360 days they waited to file suit, Plaintiff's relationship with Solstice (such as by calling Solstice at the telephone number on the Fax Message and inquiring). Solstice raised these problems at the outset of the case. Among the first documents that Solstice produced to Plaintiff

were the network lease agreement between Solstice and United Concordia Companies, Inc. ("UCCI"), Plaintiff's agreement with UCCI (where it agreed to participate in plans offered by companies, such as Solstice's, that lease UCCI's provider network), and the entry in Solstice's provider database for Plaintiff reflecting that information. Even before then, on August 23, 2022, Solstice served a Rule 11 motion explaining why the fax at issue in this case (the "Fax Message") is not an advertisement under the law, nor unsolicited, and attached the PDA and network lease agreement. *See* Ex. A. A reasonable attorney would have re-evaluated whether its claims were tenable and decided they were not. Plaintiff and its counsel did the opposite.

Contrary to their obligations under Rule 11 and 28 U.S.C. § 1927, Plaintiff and its counsel proceeded with four years of costly litigation in this putative class action, all the while lacking a good faith basis in fact or law. That is perhaps best evidenced by their constantly shifting theories of how the Fax Message constitutes an "advertisement," bringing to mind a quotation by Groucho Marx, "Those are my principles, and if you don't like those, I have others." Initially, they denied any relationship between Plaintiff and Solstice – indeed, it was the basis of their initial theory that the Fax Message was sent to get Plaintiff and the others to join Solstice's provider network – only to turn around and seek certification of a class premised upon Plaintiff and the other recipients already having that relationship with Solstice,

never acknowledging the blatant inconsistencies in their assertions. The litany of such theories has ended (so far) at perhaps its most absurd iteration: the Fax Message is an advertisement because, well, it was sent by a for-profit corporation. That argument is made more absurd – and more frivolous – by being based upon a deliberate misreading of a recent Sixth Circuit decision, a misreading made all the worse because Plaintiff and his lawyers directly participated in that appeal.

What was apparent from the start, and repeatedly confirmed in discovery, is that the Fax Message is a routine, informational communication that Solstice sent only to its in-network dental practices, like Plaintiff, that had already agreed to participate in at least one of the referenced Solstice plans (a PPO, a DHMO, and two discount plans). It was not sent to sell those in-network dental practice recipients anything, but to inform them about a new group – from two affiliated companies, The National Association for Medical and Dental, Inc. and Healthcare National Marketing, Inc. (collectively, "NAFMD") – because those group members may contact the recipients. The Fax Message was sent to facilitate already-contracted providers, such as Plaintiff, giving Solstice plan members correct information – *e.g.*, that they are on the member's new plan – and to facilitate providing them dental care on an in-network basis as the recipients had already agreed to do, including how to verify the plan members' eligibility for benefits and where to submit claims for payment (*by Solstice to the provider*). As the Court recognized at the outset, the Fax

Message contained no direct "pitch" or solicitation for anyone to buy anything from Solstice. And Plaintiff knew that before the lawsuit was even filed, as evidenced by his testimony that Solstice does not sell or charge dentists for any goods or services, not to join the provider network or for anything else, as is the case with all dental insurance companies. Yet, Plaintiff and his counsel filed suit anyway. Nor has there ever been any basis to contend the fax was sent as a pretext for a later solicitation especially when Plaintiff readily admits he never heard from Solstice again.

Plaintiff also never had a good faith basis to contend the Fax Message was "unsolicited," separate and apart from whether it was an "advertisement." Like every other intended recipient of the Fax Message, Plaintiff had an established business relationship ("EBR") with Solstice (and still does today). In its Participating Dentist Agreement with UCCI (the "PDA"), Plaintiff agreed to participate not only in UCCI's United Concordia Advantage Plus Dental Network, but also "in any other plan, program, or arrangement for which [UCCI] has agreed to provide access to the Network ('Network Access Arrangements')," "subject to all of the terms and conditions of this Agreement." ECF No. 140-8, PageID.20247 at § 2. One of those terms and conditions was that Plaintiff "agree[d] to accept communications. . . via mail, facsimile or e-mail . . . ." *Id.* at § 1(d). Again, Plaintiff and his counsel conducted no pre-suit inquiry, not even to call Solstice and ask why the Fax Message was sent to Plaintiff, and they improperly maintained this lawsuit

after Solstice's counsel explained the facts. Rather than concede their claim was meritless, Plaintiff and its class counsel – who stand to make many multiples more than Plaintiff from a class action – somehow claimed Plaintiff never agreed to participate in the Solstice PPO plain, an assertion that flies squarely in the face of the plain terms of the PDA, and is plainly frivolous.

Sanctions are warranted because this case is not and never has been well founded in fact or law. Plaintiff's and its counsel's conduct was unreasonable, not supported by a good faith basis, not supported by a reasonable inquiry, and vexatiously multiplied the proceedings. Solstice and this Court have been forced to expend substantial resources addressing claims and arguments that lack any factual and legal foundation. Plaintiff and its counsel should have to bear those costs.

## ARGUMENT

## I. THE COURT SHOULD IMPOSE SANCTIONS UNDER RULE 11

### A. Applicable Legal Standard

"Under Federal Rule of Civil Procedure 11, sanctions may be imposed if 'a reasonable inquiry discloses the pleading, motion, or paper is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay." *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 626 (6th Cir. 2010) (quoting *Herron v. Jupiter Transp. Co.*,

858 F.2d 332, 335 (6th Cir. 1988)). "The purpose of sanctions is to deter the abuse of the legal process. . . . As amended, the rule stresses the need for some pre-filing inquiry into both the facts and the law to satisfy the affirmative duty imposed." *Id.* (internal quotation omitted) (citing *Century Prods., Inc. v. Sutter*, 837 F.2d 247, 250 (6th Cir. 1988)). "[T]he goals of Rule 11 . . . are the deterrence and punishment of offenders and the compensation of their opponents for expenditure of time and resources responding to unreasonable pleadings or motions." *INVST Fin. Group, Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 404 (6th Cir. 1987).

"If a district court concludes that Rule 11 has been violated, the court has no discretion and must impose sanctions. However, in deciding the nature and extent of sanctions to impose, the district court is given wide discretion." *Id.* at 401. "In the Sixth Circuit, the test for imposing Rule 11 sanctions is 'whether the individual's conduct was objectively reasonable under the circumstances.'" *King v. Whitmer*, 556 F. Supp. 3d 680, 698 (E.D. Mich. 2021) (Parker, J.) (quoting *Nieves v. City of Cleveland*, 153 F. App'x 349, 352 (6th Cir. 2005)). "To determine objective reasonableness, the court must ask 'whether the position advanced by a party was supported by a reasonable inquiry into the applicable law and relevant facts.'" *Id.* (quoting *Advo Sys., Inc. v. Walters*, 110 F.R.D. 426, 430 (E.D. Mich. 1986)). "Whether a 'reasonable inquiry' was conducted 'is judged by objective norms of what reasonable attorneys would have done.'" *Id.* (quoting *In re Big Rapids Mall*

*Assoc.*, 98 F.3d 926, 930 (6th Cir. 1996)). "This objective standard is 'intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments.'" *Id.* (quoting Fed. R. Civ. P. 11, Advisory Comm. Notes (1993)).

Importantly, "the reasonable inquiry under Rule 11 is not a one-time obligation. . . . [T]he plaintiff is impressed with a continuing responsibility to review and reevaluate his pleadings and where appropriate modify them to conform to Rule 11." *Runfola & Assocs., Inc. v. Spectrum Reporting II, Inc.*, 88 F.3d 368, 374 (6th Cir. 1996). "Failure to do so permits the district court, within its discretion, to impose sanctions against the offending litigant or attorney when a reasonable inquiry would have disclosed that the complaint was either lacking in factual support or unwarranted by existing law." *Herron*, 858 F.2d at 336. "[A]n attorney and the litigant have a continuing obligation to review and reevaluate their pleadings, motions and other papers and upon discovery that such papers were without merit, to immediately dismiss the action at the risk of inviting the imposition of Rule 11 sanctions." *Id.*

### B. Plaintiff Had no Good Faith Basis to Claim the Fax Message is an Advertisement

The TPCA does not prohibit all faxes, even all unsolicited faxes. It prohibits only the sending of unsolicited fax advertisements. Plaintiff and its counsel, though, plainly failed to conduct the necessary reasonable inquiry before bringing this lawsuit, as they had no good faith basis to allege the Fax Message is an advertisement sent in violation of 47 U.S.C. § 227(b)(1)(C). This failure was confirmed, repeated,

and magnified over the course of four years of litigation.

The TCPA defines an "advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services." *Id.* at § 227(a)(5). The Sixth Circuit has issued controlling case law further detailing what constitutes an "advertisement." To be an "advertisement," first, a fax must "promote goods or services to be bought or sold" and must be sent "with hopes to make a profit" by sending the fax to the recipient, through a direct solicitation or as a "pretext for a [later] commercial solicitation." *Sandusky Wellness Center, LLC v. Medco Health Solutions, Inc.*, 788 F.3d 218, 222, 225 (6th Cir. 2015). *See also Matthew N. Fulton, D.D.S., P.C. v. Enclarity, Inc.*, 962 F.3d 882, 891 (6th Cir. 2020) (finding fax "solicit[ing] information to verify [defendant's] system of provider information, which Defendants make commercially available to [customers] . . . who may subject [plaintiff] to future unsolicited advertising" was plausibly alleged to be advertisement "because it served as a commercial pretext for future advertising opportunities"). Second, there must be a profit motive directly from the sending of the fax for a fax to be an advertisement. "The fact that the sender might gain an ancillary, remote, and hypothetical economic benefit later on does not convert a noncommercial, informational communication into a commercial solicitation." *Sandusky*, 788 F.3d at 225. If a fax lacks these characteristics, "as a matter of law" "it's not an ad." *Id.*

A reasonable pre-filing inquiry would have revealed that the Fax Message does not contain ***any*** of these necessary characteristics and there was ***no*** good faith basis for alleging it was an advertisement. The Fax Message is a purely informational communication to in-network providers contracted with Solstice, directly or indirectly (as in the case of Plaintiff). It informs them that a new group's members would be joining at least one of the listed Solstice plans for which the recipient – including Plaintiff – was a participating provider. *See*, *e.g.*, ECF No. 146-1, PageID.21410-13, ¶¶28-44; ECF No. 146-11. There is now no dispute that Plaintiff was such a provider. *See*, *e.g.*, ECF No. 175, PageID.31331 (citing ECF No. 116-10, PageID.5002-03).

The Fax Message did not offer any goods or services for sale, does not quote a price, and does not direct the recipient to purchase anything. This Court observed in its first exposure to the Fax Message that it was "not a direct a direct solicitation on its face . . . ." ECF No. 25, PageID.183. Moreover, Plaintiff's principal, Bryan J. Lyngaas, D.D.S., readily admitted at Plaintiff's Rule 30(b)(6) deposition that Solstice never asked him to buy anything and no dental insurance company such as Solstice has ***ever*** charged or tried to charge him for any product or service. ECF No. 146-2, PageID.21489, 21701-02. Yet, he maintained the Fax Message was an advertisement for "three" so-called "strong reasons": (1) the opt-out notice uses the word "advertisement"; (2) the name of the new member group includes the word

"marketing"; and (3) "it's trying to get me to become a provider" with Solstice. *Id.* at PageID.21686-95, 21712-13. All three grounds are frivolous, including because Plaintiff already was a provider with Solstice. That means Plaintiff and its attorneys never had any basis to contend the Fax Message was a direct solicitation.

As for the other potential type of solicitation, an indirect or pretextual solicitation, Plaintiff has ***never*** claimed the Fax Message was a pretext for a later solicitation. Indeed, Dr. Lyngaas readily admitted at the Rule 30(b)(6) deposition that Solstice had never communicated with him or his office following the informational Fax Message, something known to Plaintiff and its counsel at the time they filed this lawsuit, nearly four years after the sending of the Fax Message. *See id.*, PageID. 21714, 21719-20. Plaintiff and its counsel therefore never had a basis to allege the only other type of actionable solicitation, either.

Plaintiff and its counsel also violated Rule 11 by failing to investigate Plaintiff's relationship with Solstice. Even though they gave themselves nearly four years to investigate, neither ever contacted Solstice to inquire why the Fax Message was sent to Plaintiff. Had they done so, they would have learned that Plaintiff was a participating provider through Solstice's lease of one of UCCI's provider networks, a lease in which Plaintiff agreed to participate. *See* ECF No. 146-1, PageID.21406, ¶11; ECF No. 144-2, §§1.3, 1.12, 2.4, 3.3; ECF No. 176, PageID.31331 (finding that the Plaintiff was a network provider on Solstice's

network after Plaintiff conceded that fact); ECF No. 146-2, PageID.21444 ("Q. Are you a provider on a network that has been leased to Solstice Benefits? A. Yes. Q. Which network is that? A. United Concordia."). They were put on notice went Solstice served its first of several Rule 11 motions to that effect. *See* Ex. A.

What followed was a multi-year frivolous lawsuit. Instead of withdrawing untenable theories and dismissing the case, Plaintiff engaged in what this Court has already recognized as a "moving target" approach to litigation. ECF No. 176, PageID.31343. When one advertisement theory faltered, rather than conclude what a reasonable litigant or attorney would conclude, that there is simply no merit to the claim, Plaintiff and its attorneys quickly advanced another theory to take its place. Plaintiff first told the Court that "Defendant's fax was a direct solicitation to Plaintiff to become part of Defendant's own 'provider network,'" "become a new addition to Defendant's provider network," and "join Defendant's provider network" "for the first time." ECF No. 20, PageID.133, 135, 136, 138. ***There was never any evidence or good faith basis for those assertions***. Plaintiff was ultimately forced to concede the Fax Message was sent only to existing, in-network Solstice providers, *flatly refuting* his contention that it was sent to solicit him and the other recipients to join a network, which it now admits it was already in. As the Court found, based on Plaintiff's deposition testimony, "Plaintiff acknowledges being a provider on a network lease to Solstice." ECF No. 176, PageID.31331.

Plaintiff's and its counsel's frivolous conduct is so pervasive in this case it is difficult to catalogue all of the various theories Plaintiff has thrown about, without any basis in fact or law, desperate to have something "stick to the wall." Plaintiff persuaded the Court that the Fax Message might be an indirect solicitation in that by directing recipients "'[t]o verify eligibility,' they should 'log into (or create an account)Mysolstice.net [sic],'" which the Court credited as "direct[ing] the relevant market to a company's commercial website" that contains promotional language regarding numerous services offered to providers that the Court doubted "would be free of charge," "under the guise of 'verification . . . .'" *Solstice*, 2023 WL 2914286 at *4-5. This, too, was asserted in bad faith. Verifying eligibility for benefits is a "standard business practice for dental practices" and means "find[ing] out" "a member's benefits and how they apply in their plan that they purchased and what benefits are available to them for any dentist that wants to provide services." ECF No. 146-1, PageID.21413-14, ¶¶47-49; ECF No. 146-2, PageID.21571-72; ECF No. 146-5, PageID.21885. Dr. Lyngaas testified to the very same understanding about this "common practice . . . ." ECF No. 146-2, PageID.21474-78, 21747-38. There has never been any evidence showing this language in the Fax Message was ever meant, intended, or understood to mean the *provider's* eligibility to be in Solstice's provider network, what is what Plaintiff frivolously argued. ECF No. 146-1, PageID.21414, ¶50. *See also* ECF No. 146-6, PageID.22017-18 ("It would be the

eligibility of the member," not "the eligibility of the provider for something").

Moreover, the reference to verifying eligibility that is seized upon by Plaintiff refers to logging into or creating an account on Mysolstice.net. ECF No. 146-1, PageID.21414, ¶51; ECF No. 146-11, PageID.22206. Dr. Lyngaas testified that verifying eligibility for benefits is often done on-line through the insurance company's website, but his office never logged into Mysolstice.net so Plaintiff had no idea how it operated. ECF No. 146-2, PageID.21474-80, 21571-72, 21683**,** 21714. Far from what Plaintiff argued, only providers already in the Solstice provider network can create an account on Mysolstice.net and log into it. ECF No. 146-1, PageID.21414, ¶52; ECF No. 146-4, PageID.21866; ECF. No. 146-6, PageID.22017-19. Had Plaintiff ever logged into the MySolstice.net portal, it would have seen it contains none of the supposed "promotional" language Plaintiff argued to the Court existed, (ECF No. 20, PageID.132), which is from a distinct website, *SolsticeBenefits.com*. *See* ECF No. 146-1, PageID.21414-15, ¶¶52-54; ECF No. 146-18, PageID.22272; ECF No. 146-19, PageID.22274-75. In this way, among others, Plaintiff avoided judgment on the pleadings through made-up facts.

Then, even though Plaintiff initially argued the Fax Message solicited it to ***join*** Solstice's provider network, it has also argued the Fax Message was sent to solicit Plaintiff to ***remain*** in Solstice's provider network. The Fax Message says nothing of the sort. That also is contrary to Dr. Lyngaas's own testimony that

Plaintiff's advertisement claim is based upon his practice having had ***no relationship*** with Solstice at the time of the Fax Message, and when asked if the Fax Message could have been trying to sell him something if he was already a provider in the Solstice PPO network (something he now admits was the case), he responded, "I think it's hard for me to answer that question so I'll give you I don't know." *Id.*, PageID.21721-23. Rule 11 and 28 U.S.C. § 1927 exist so that litigants do not try to play these sort of games, certainly not without consequences. And, even if this argument were not foreclosed by Plaintiff's testimony, a communication sent with the purpose of inducing a recipient to *remain* in or to *continue* their relationship with the sender does not qualify as "promot[ing] the availability or quality of something available to be bought or sold," (*Sandusky*, 788 F.3d at 224), particularly when Solstice does not sell anything to providers. ECF No. 146-1, PageID.21411, ¶34. *See also*, *e.g.*, *P&S Printing LLC v. Tubelite, Inc.*, No. 3:14-CV-1441 VAB, 2015 WL 4425793, *6 (D. Conn. July 17, 2015) (dismissing TCPA fax claim).

Then Plaintiff contended the Fax Message is an advertisement because it was sent to retain NAFMD and its members as customers and to otherwise improve Solstice's reputation or goodwill. There has never been any evidence of that. Moreover, none of that can constitute the requisite "promot[ion of] the availability or quality of something available to be bought or sold," and the Sixth Circuit long ago rejected basing that status on any claimed "positive effect on [defendant's]

business" from sending the fax, because "[t]he fact that the sender might gain an ancillary, remote, and hypothetical economic benefit later on does not convert a noncommercial, informational communication into a commercial solicitation." *Sandusky*, 788 F.3d at 222, 224, 225. The Third Circuit rejected this same theory when the same attorneys raised it there, as have other courts. *See Optum*, 925 F.3d at 133; *P&S Printing*, 2015 WL 4425793 at *4; *Blue Shield of Cal.*, 228 F. Supp. 3d at 1068; *Orrington*, 2019 WL 4934696 at *5; *BPP*, 53 F.4th at 1113.[1]

The comedy of errors then took on perhaps its most ridiculous theory of liability: Plaintiff contended that the inclusion of "SolsticeBenefits.com" in the footer of the stationery of the Fax Message, immediately below Solstice's mailing address and telephone number, somehow converted the Fax Message into an advertisement by "steer[ing] traffic to Solstice's website" through the mere presence of that URL. ECF No. 146-20, PageID.22286-88, Resp. No. 16.[2] This theory has

[1] *See also*, *e.g.*, *id.* ("To consider a fax to be an unlawful advertisement on the basis of a remote or minor commercial purpose would vastly broaden the TCPA's definition of unsolicited advertisement. Almost any fax could economically benefit the sender through branding, goodwill, or other indirect effects, regardless of whether that fax would be plainly understood as promoting a commercial good or service.").

[2] Another contender for the most ridiculous "advertisement" theory is Plaintiff's assertion that the Fax Message is an advertisement because it has the word "marketing" in it, even though that is only when referring to the name of the new member group, The National Association for Medical and Dental, Inc./Healthcare National Marketing. ECF No. 146-2, PageID.21687-95. At least Plaintiff's counsel did not advance this theory in any of their filings.

been roundly rejected, including by the FCC and two circuit courts (the plaintiffs in both cases were represented by Plaintiff's counsel).[3]

Plaintiff and its lawyers have also maintained the Fax Message is an advertisement, not because it promotes something for sale, but because it includes language informing the recipient they can "request that the sender not send any future advertisements," (ECF No. 146-20, PageID.22288 at Resp. No. 16), even though that is language required by the TCPA and its regulations for exemption from potential liability. *See* 47 U.S.C. § 227(b)(2)(D); 47 C.F.R. 64.1200(a)(4)(iii). That argument, too, has no legal basis. The overly careful use of such standard language provides no indication of whether a particular communication is indeed subject to the statute. There is an extensive body of case law, including Sixth Circuit decisions, to this effect regarding similar boilerplate language from the Fair Debt Collection Practices Act.[4]

---

[3] *See Nat'l Imaging*, 767 F. App'x at 249-50 (rejecting this theory because it would mean "any fax sent by defendant, for any purpose, as long as it contains defendant's website address, could become a 'pretext' to more advertising," as opposed to directing the recipient "to a website for the purposes of making a purchase"); *Supply Pro Sorbents, LLC v. RingCentral, Inc.*, 743 Fed. App'x 124, 125 (9th Cir. 2018) (applying FCC guidance and holding reference to defendant's website address was incidental and did not convert fax into advertisement). *Cf. Ambassador*, 74 F.4th at 832 ("The TCPA does not go so far as to prohibit sending faxes on company letterhead to promote free education on topics that relate to the sender's business"); *Blue Shield of Cal.*, 228 F. Supp. 3d at 1067 ("The mere fact that parts of Blue Shield's website contains the capability of allowing consumers to engage in commerce does not transform any message including its homepage into telemarketing or advertising.").

[4] *See* 15 U.S.C. § 1692e(11); *Goodson v. Bank of Am., N.A.*, 600 F. App'x 422, 432 (6th Cir. 2015); *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 399-400 (6th Cir. 1998). *See also*, *e.g.*, *Heinz v. Carrington Mortg. Servs., LLC*, 3 F.4th 1107,

Plaintiff and its counsel never had any basis in fact or law to claim an advertisement on this ground, either.

Discovery has confirmed what Solstice has told Plaintiff and its counsel for years, including by previously-served Rule 11 motions: the Fax Message was not sent to promote anything for sale or as part of some pretext for a later follow-up solicitation. ECF No. 146-1, PageID.21413, ¶45; ECF No. 146-2, PageID.21714; *see also id.* at 21719-20 (similar). Plaintiff confirmed he never received another communication in any form from Solstice. *Id.* at PageID. 21714, 21719-20. Nor was there any evidence of a revenue-generating mechanism tied to the Fax Message itself. *See* ECF No. 119 at 153:9-155:7; ECF No. 121 at 10:23-13:22. After several years of discovery, including depositions of every individual involved in drafting and transmitting the Fax Message, Plaintiff still cannot identify a single thing that was being promoted "to be bought or sold." *Sandusky*, 788 F.3d at 222.

In the face of this evidentiary record, a litigant and an attorney acting reasonably under the circumstances would have decided the TCPA claim is meritless and sought to end the litigation.[5] Plaintiff and its counsel did not do that. Instead,

---

1114 (8th Cir. 2021); *Boosahda v. Providence Dane LLC*, 462 F. App'x 331, 334–35 (4th Cir. 2012); *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 386 n.3 (7th Cir. 2010); *Maynard v. Cannon*, 401 F. App'x 389, 395 (10th Cir. 2010); *Wade v. Reg'l Credit Ass'n*, 87 F.3d 1098, 1100 (9th Cir. 1996).

[5] *See Dearborn St. Bldg. Assocs., LLC v. Huntington Nat. Bank*, 411 F. App'x 847, 851 (6th Cir. 2011) ("Rule 11 sanctions are . . . proper where, as here, instead of withdrawing a complaint or agreeing to dismissal, a plaintiff 'continued to litigate

they continued advocating their spurious claim based on a completely unsupported, incorrect, and baseless interpretation of the law. Plaintiff and its attorneys now argue a fax need only be "commercial in nature" to be an advertisement, with no solicitation or direct profit motive from a solicitation required. *See* ECF No. 184, PageID.31740, 31744 (quoting *Lyngaas v. United Concordia Cos., Inc.*, 140 F.4th 749, 751 (6th Cir. 2025)).

That is wrong, and no court has applied that standard. Plaintiff's selectively-excerpted formulation omits that *United Concordia* reaffirmed the unambiguous requirements of *Sandusky*, namely that to be an advertisement the fax must solicit something for sale or purchase from or through the recipient, either directly or indirectly as a pretext for a later solicitation, and that solicitation must have a sufficiently direct nexus to the sender profiting from that solicitation (as opposed to a generalized or hypothetical benefit). *United Concordia*, 140 F.4th at 751. Remarkably, Plaintiff and its attorneys actively participated in *United Concordia*, so they know what they are doing: misreading *United Concordia* and mischaracterizing the law, particularly *Sandusky*, in a desperate attempt to rewrite the law because there are no supporting facts in this case under the actual, operative

after it became clear that his claim was frivolous, unreasonable or without foundation.'") (quoting *Bailey v. Papa John's USA, Inc.*, 236 Fed. Appx. 200, 203 (6th Cir. June 11, 2007)); *Runfola*, 88 F.3d at 374 ("[T]he plaintiff is impressed with a continuing responsibility to review and reevaluate his pleadings and where appropriate modify them to conform to Rule 11.").

law. *Sandusky*'s requirements to be an advertisement are controlling in this Court, but they are also so well-known and adopted that they have been relied upon by a number of courts in rejecting the same "profit motive" only argument Plaintiff and its attorneys now advance after the close of discovery, with Plaintiffs' counsel almost always being the ones making the argument.[6]

In other words, what Plaintiff and its lawyers argue is not the law, never has been the law, and is contrary to controlling case law, making the arguments plainly frivolous. *Accord Waeschle v. Dragovic*, 687 F.3d 292, 296 (6th Cir. 2012); *Bojicic v. DeWine*, 714 F. Supp. 3d 913, 938 (N.D. Ohio 2024), *aff'd*, 145 F.4th 668 (6th Cir. 2025). Sanctions are appropriate to deter repetition of this conduct, to compensate for the unnecessary expenditure of resources required to defend against a legally foreclosed claim, and to reinforce that Rule 11 demands more than persistence – it demands reason and good faith bases in fact and law.

### C. PLAINTIFF'S ASSERTION THAT THE FAX MESSAGE WAS UNSOLICITED IS ALSO FRIVOLOUS

The filing of this lawsuit is also frivolous for an additional and independent

---

[6] *See*, *e.g.*, *Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 80 F.4th 466, 473-474, 476 (4th Cir. 2023) (citing *Sandusky*); *BPP v. CaremarkPCS Health, L.L.C.*, 53 F.4th 1109, 1112-13 (8th Cir. 2022) (citing *Sandusky*); *Robert W. Mauthe, M.D., P.C. v. Optum Inc.*, 925 F.3d 129, 133 (3d Cir. 2019); *Mauthe v. Nat'l Imaging Assocs., Inc.*, 767 F. App'x 246, 249 (3d Cir. 2019) (citing *Sandusky Exclusively Cats Veterinary Hosp., P.C. v. M/A/R/C Rsch., L.L.C.*, 444 F. Supp. 3d 775, 781-82 (E.D. Mich. 2020) (citing Sandusky).
.

reason: there is no good faith basis to allege or contend the Fax Message was unsolicited. Under the TCPA, the sending of a fax advertisement is unlawful only if it is "unsolicited." *See* 47 U.S.C. §§ 227(a)(5) & (b)(1)(C). An advertisement is "unsolicited" if it is "transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." *See* 47 U.S.C. § 227(a)(5). Where prior express invitation or permission exists, the statute does not apply. An EBR also avoids liability. *See* 47 U.S.C. § 227(b)(1)(C).

Here, Plaintiff gave express permission to receive faxes from entities such as Solstice as part of its EBR with Solstice. Plaintiff and its counsel, though, as a result of insufficient pre-suit inquiry, disclaimed and denied any relationship with Solstice from the start of the case. They maintained that position for many years, even after Solstice put them on notice of the facts at the beginning of the case and repeatedly in discovery. *See*, *e.g.*, Ex. A; Ex. B at Resp. No. 13, 15, 16; Exs. C-F at Resp. Nos. 15 & 16. The indisputable facts are as follows. Plaintiff, like every other provider who signed the form PDA with UCCI, agreed to participate "in any other plan, program or arrangement for which [UCCI] has agreed to provide access to the Network" and "specifically authorize[d] [UCCI]" to enter into such arrangements "and agree[d] to provide services to Members enrolled under any [such arrangements], ***subject to all of the terms and conditions of [the PDA]***." ECF No. 140-8, PageID.20247, ¶2 (emphasis added). As the Court observed, "[o]ne of those

conditions was 'agree[ing] to accept communications from [UCCI] via . . . facsimile . . . .'' ECF No. 176, PageID.31330-31 (quoting *id.* at ¶ 1(d)). Dr. Lyngaas testified "my assumption is when I signed a form for communication by fax it was for patient-related information only," but admitted the PDA has no such limitation: "I gave [UCCI] permission in my understanding and without having seen an ability to pick and choose which communications I want . . . ." ECF No. 146-2, PageID.21595-96.

The record is clear that Plaintiff provided its fax number to UCCI in August 2014. ECF No. 133, ¶8 & Ex. G. The evidence is also clear that, as a result, Plaintiff's information, including its fax number, was included in the provider directory UCCI transmitted to Solstice pursuant to their 2017 network lease. *Id.* ¶14; ECF No. 140-1, PageID.19503, ¶16. By agreeing in the PDA to provide services to members of plans accessing the leased UCCI provider network – including Solstice's PPO plan and other plans disclosed on UCCI's website – and by providing its fax number and other information to UCCI authorizing UCCI to disseminate that provider-directory information, Plaintiff provided its "permission or invitation" "in writing or otherwise" to receive fax communications related to that leased network relationship. ECF No. 133, ¶14; ECF No. 140-1, PageID.19503, ¶16; ECF No. 140-8, PageID.20247, ¶2. Plaintiff also agreed to comply with UCCI's Dental Reference Guide ("DRG"), which is available on UCCI's website and, beginning in 2017, identified Solstice as a leasing entity. See ECF No. 140-8, PageID.20247, §2; ECF

No. 133, ¶¶7, 12-13, Ex. F-11 at UCCI_SOLSTICE-0007315 & Ex. F-12 at UCCI_SOLSTICE_0000047 (2017 and 2021 versions of DRG). The FCC and the courts have regularly found that under these circumstances, where the party knows its telephone number is being made available to others, that constitutes permission and/or invitation for purposes of the TCPA, which with respect to faxes permits a more liberal approach where this can be communicated "in writing or otherwise." 47 U.S.C. § 227(b)(1)(C).[7]

All of this should have been uncovered with even the most minimal pre-suit inquiry as to Plaintiff's relationship with Solstice and why the Fax Message was sent to Plaintiff, which would have revealed – by calling UCCI, calling Solstice, looking up the Solstice provider directory for Plaintiff's information, and/or consulting UCCI's DRG on its website – that Solstice entered into an arrangement with UCCI,

[7] *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C. Rcd. 8752, 8769 (1992) ("[P]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary."); *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 620 (3d Cir. 2020) (finding plaintiff agreed to receive faxes that related to and were "part of an ongoing business relationship" in which it provided its telephone number); *Gorss Motels, Inc. v. Safemark Sys., LP*, 931 F.3d 1094, 1101-02 (11th Cir. 2019) (finding Wyndham franchisees gave fax number to Wyndham "and, as part of that process, agreed to receive information" from Wyndham affiliates); *Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338, 346 (6th Cir. 2016) (explaining there is "no distinction between directly providing one's [telephone] number to a [caller] and taking steps to *make that number available* through other methods" so that "there is no one way for a caller to obtain consent, and . . . such consent can be conveyed by another party.").

that Plaintiff is an in-network provider with Solstice on the Solstice PPO plan on that basis, and Plaintiff had agreed to participate under the same condition that applied to UCCI: an agreement to accept communications such as the Fax Message by facsimile. Indeed, after disputing it over several years of costly litigation, Plaintiff and its counsel ultimately conceded what Solstice told them at the outset – Plaintiff is an in-network provider with Solstice through a contractual agreement with UCCI. *See* ECF No. 128 at 3, 9. As this Court noted, "Plaintiff concedes . . . all of the recipients of the subject fax were Solstice in-network providers." ECF No. 176, PageID.31343. Plaintiff and its counsel's maintenance and advocacy of the TCPA claim long after being told of these facts is sanctionable, especially when they now concede the relationship, but only after requiring many years of costly litigation for Solstice and this Court's time. *Accord*, *e.g.*, *Runfola*, 88 F.3d at 374.

## II. SANCTIONS SHOULD ALSO BE IMPOSED UNDER 28 U.S.C. § 1927

An attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess of costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "Section 1927 applies 'even in the absence of any conscious impropriety.'" *Bojicic v. DeWine*, 145 F.4th 668, 673 (6th Cir. 2025) (quoting *Hall v. Liberty Life Assurance Co. of Bos.*, 595 F.3d 270, 275 (6th Cir. 2010)). "The proper inquiry is not whether an attorney acted in bad faith; rather, a court should consider

whether an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." *Hall*, 595 F.3d at 275-76. "A legal contention is frivolous if it is 'obviously without merit' under existing law and unsupported by a good-faith argument to change or extend the law." *King v. Whitmer*, 71 F.4th 511, 528 (6th Cir. 2023) (quoting Fed. R. Civ. P. 11(b)(2)).

For the same reasons that Plaintiff's counsel violated Rule 11, they also violated § 1927 in contending without any objective, non-frivolous basis that the Fax Message was an unsolicited advertisement. *Accord Scott v. Sanders*, 789 F. Supp. 2d 773, 776 (E.D. Ky. 2011) ("Whether counsel's obligations under this rule [Rule 11] were met is pertinent to the court's analysis of whether his actions were "vexatious" or otherwise sanctionable under § 1927."). Plaintiff's counsel "pursued the case . . . long after it should have become clear that the claims lacked any plausible factual basis" or legal basis. *Ridder*, 109 F.3d at 298.

As in *Ridder*, Plaintiff's counsel "continued asserting the same frivolous claims . . ., all the while revealing no plausible factual basis" or legal basis for those claims. *Id.* at 299. Plaintiff's counsel forced Solstice to incur millions of dollars in defense costs over the only fax Solstice ever sent to Plaintiff on the premise that it "was a direct solicitation to Plaintiff to become part of Defendant's own 'provider network'" and "to become a new addition to Defendant's provider network"

because, Plaintiff argued, it "was not, in fact, 'a contracted provider' for any of the plans listed in Defendant's fax." ECF No. 20, PageID.133-34. By no later than August 23, 2022, when Solstice served its first motion for sanctions, along with the PDA and Solstice-UCCI network lease agreement, Plaintiff's counsel was on notice that those assertions and the TCPA claim in this case were groundless. Yet, they vexatiously multiplied proceedings by continuing to assert the claim under various unsupported theories, one after the other. Rather than withdraw the claim, Plaintiffs' counsel continued to advocate it for years, even filing a motion for class certification admitting that Plaintiff and the other intended recipients ***were in fact*** in-network providers. *See* ECF No. 128 at 3, 9 (inaccurately contending Solstice sent the Fax Message to "its entire network of . . . providers" and "every fax number in its assembled provider network"). This is a textbook case of vexatiously multiplying proceedings in pursuit of a frivolous claim.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests this Court impose sanctions against Plaintiff and its counsel. Their conduct squarely violates Rule 11 and 28 U.S.C. § 1927, undermines the integrity of the judicial process, and warrants the imposition of meaningful sanctions to deter repetition of such misconduct.

Dated: October 7, 2026 GREENSPOON MARDER LLP

/s/ *Jeffrey A. Backman*

Jeffrey A. Backman
Roy Taub
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
954.491.1120 (Telephone)
954.343.6958 (Facsimile)
jeffrey.backman@gmlaw.com
roy.taub@gmlaw.com

SMITH HAUGHEY RICE & ROEGGE, PC
Kristen E. Guinn P72148
100 Monroe Center NW
Grand Rapids, MI 49503
(616) 458-6245 (Telephone)
(616) 774-2461 (Facsimile)
kguinn@shrr.com

*Attorneys for Defendant*
*Solstice Benefits, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that, in compliance with Federal Rule of Civil Procedure 11(c)(2), a true and correct copy of the foregoing was served on July 2, 2026 by email and by FedEx overnight delivery upon the following:

Phillip A. Bock
David M. Oppenheim
Jeffrey Berman
Barry Blonien
BOCK HATCH & OPPENHEIM, LLC
203 N. La Salle Street, Ste. 2100
Chicago, IL 60601
Telephone: 312-658-5500
Facsimile: 312-658-5555
phil@classlawyers.com

david@classlawyers.com
jeff@classlawyers.com
barry@classlawyers.com
service@classlawyers.com

Richard E. Shenkan
SHENKAN INJURY LAWYERS, PLLC
6550 Lakeshore Street
West Bloomfield, MI 48323
Telephone: 1-800-601-0808
Facsimile: 1-888-769-1774
rshenkan@shenkanlaw.com

*Attorneys for Plaintiff*

I HEREBY FURTHER CERTIFY that a true and correct copy of the foregoing was served on all counsel of record via filing on CM/ECF on October 7, 2026.

*/s/ Jeffrey A. Backman*
JEFFREY A. BACKMAN