# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | | |
|---|---|---|
| BRIAN J. LYNGAAS, D.D.S., P.L.L.C., individually and on behalf of all others similarly-situated, | ) | Case No. 22-cv-10830 |
| Plaintiff, | ) | Hon. Linda V. Parker |
| v. | ) | Hon. Curtis Ivy, Jr. |
| SOLSTICE BENEFITS, INC. and JOHN DOES 1-5, | ) | **CLASS ACTION** |
| Defendants. | ) | |

**DEFENDANT SOLSTICE BENEFITS, INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Defendant Solstice Benefits, Inc. ("Solstice"), by and through undersigned counsel, hereby serves its Objections and Responses to Plaintiff Bryan J. Lyngaas, D.D.S., P.L.L.C's First Set of Interrogatories Directed to Solstice Benefits, Inc., dated September 24, 2022.

## GENERAL OBJECTIONS

The following General Objections apply to and are incorporated by reference into each Response detailed below given objections to certain definitions and instructions and are being made as General Objections solely on that basis. The following General Objections are made with respect to the Requests and the Definitions contained thereto and incorporated in the Requests. The failure to refer

specifically to a General Objection shall not be construed as a waiver of that General Objection. In addition, the assertion of the same, similar or additional objections in response to a specific Request does not waive any General Objection as set forth more fully below.

1. Solstice's Responses are made without waiver of, and with preservation of, the following:

a. All questions as to competency, relevancy, materiality, privilege, and admissibility of each Response and the subject matter thereof as evidence for any purpose in any further proceedings in this action, including the trial of this action;

b. The right to object on any ground to the use of any response or the subject matter thereof in any further proceedings in this action, including the trial of this action; and

c. The right to object on any ground at any time to a demand or request for further response, including production of documents or interrogatories, to these or any other discovery proceedings involving or relating to the subject matter of the Requests.

2. Solstice objects to the definition of "Subject Fax" as overly broad, unduly burdensome, vague, ambiguous, unintelligible, calling for a legal conclusion, seeking irrelevant information, and disproportional to the needs of the case. Plaintiff

attempts to include within the scope of the definition of "Subject Fax" "every fax Solstice sent . . . advertising the commercial availability or quality of any property, goods, or services, including without limitation all faxes indicating that 'the recipient is entitled to request that the sender not send any future advertisements to its telephone facsimile machines' or words to that effect." Plaintiff alleges that he received ***one*** fax in violation of the TCPA on or about April 23, 2018. *See* Compl. at ¶ 4. Discovery regarding any fax of a type differing from the exact fax attached to the Complaint as Exhibit A, *i.e.*, the one that he allegedly received on April 23, 2018, especially on the broad terms sought by Plaintiff for a period of over four years, and requiring the application of a legal conclusion that does not even apply to Exhibit A, is therefore plainly overbroad, unduly burdensome, seeks irrelevant information, and disproportional to the needs of the case because it would not be relevant to any party's claim or defense, as it does not concern any fax allegedly received by the Plaintiff. Moreover, the language regarding "future advertisements" has no relationship to or bearing or relevance on whether or not a document containing such language constitutes an advertisement, just as a contract whereby one party consents to receive "future advertisements" over the telephone or by fax is not itself an advertisement. Solstice will therefore limit its Responses to Requests containing this defined term – "Subject Fax" or "Subject Faxes" – to the facsimile transmission attached to the Complaint as Exhibit A and any other facsimile

transmission stating the same language to any other person on or about the same date that Plaintiff alleges he received it (hereinafter the "Fax Message").

3. Solstice objects to the Requests on the grounds that they are overbroad, unduly burdensome, seek irrelevant information, and are disproportional to the needs of the case as there is no delineated relevant time period. Subject to and without waiver of any other objections to the Requests asserted by Solstice, and unless otherwise stated, Solstice will limit the relevant period to its response to the Requests to be no earlier than April 18, 2018.

## SPECIFIC OBJECTIONS AND RESPONSES

**1. Identify each person involved in answering these Interrogatories or Plaintiffs Requests for Production, including each person you consulted or who provided information that you relied on in answering any Interrogatory or Request, and state the information supplied by each such person.**

**RESPONSE:** Solstice objects to this request on the grounds that it is overly broad, unduly burdensome, disproportional to the needs of the case, and requests communications protected by the attorney-client privilege and work product doctrine, including the request to provide the information supplied to counsel. Subject to the foregoing General and Specific Objections, Solstice states the following: Dr. Leonard A. Weiss and Stacey Brocatto-McManus.

**2. Describe in detail why the document now attached as Exhibit A to the Class Action Complaint was sent by facsimile transmission to Plaintiff and other doctors on or about April 23, 2018.**

**RESPONSE**: The document appearing as Exhibit A to the Complaint was sent to inform existing providers on Solstice's network and networks leased by Solstice through agreements with United Concordia and PPO USA that new members may choose to seek dental care from those existing providers' dental practices and to facilitate those existing providers' dental practices' submission of any claims for providing dental care to these new members.

**3. Identify each person with knowledge about the development, creation, or facsimile transmission of the document sent to Plaintiff and other doctors on or about April 23, 2018—Exhibit A to the Class Action Complaint—and state the general subject matter of each such person's knowledge and involvement.**

**RESPONSE:** Stacey Brocatto-McManus manages the Provider Relations team at Solstice, which is the team that wanted to inform the already existing providers within Solstice's network and leased networks of the new members. Stacey Brocatto-McManus, Brian Correia, Esther Felipe, and Sherri Irwin had involvement in the development and creation of the Fax Message. Westfax, a third-party vendor, was responsible for the transmission of the Fax Message.

**4. Who among the people you identified in response to Interrogatory 3 knew or believed on April 23, 2018, that the document now attached as Exhibit A to the Class Action Complaint was an advertisement?**

**RESPONSE:** Solstice objects to the Request on the ground that it is overbroad, unduly burdensome, calls for a legal conclusion as to the term "advertisement," which has a specific and statutorily-defined meaning under the

TCPA, seeks irrelevant information, and is disproportional to the needs of the case. The Request calls for information about the specific knowledge or beliefs of individual persons, and not Solstice, the relevant party.

**5. Who among the people you identified in response to Interrogatory 3 knew or believed on April 23, 2018, that the TCPA prohibited sending an advertisement by fax without prior express invitation or permission?**

**RESPONSE:** Solstice objects to the Request on the ground that it is overbroad, unduly burdensome, calls for legal conclusions as to the term "advertisement" and the requirements of the TCPA, seeks irrelevant information, is disproportional to the needs of the case, and is premised upon a false, inaccurate, and incomplete statement of law. The Request calls for information about the specific knowledge or beliefs of individual persons on a particular date, and not Solstice, the relevant party.

**6. Identify each Subject Fax sent by facsimile transmission at any time since April 17, 2018.**

**RESPONSE:** In addition to the General Objections, Solstice objects to this request on the grounds that the definition of "Subject Fax" is overly broad, unduly burdensome, vague, ambiguous, unintelligible, calls for a legal conclusion, seeks irrelevant information, and is disproportional to the needs of the case. Plaintiff attempts to include within the scope of the definition of "Subject Fax" "every fax Solstice sent . . . advertising the commercial availability or quality of any property,

goods, or services, including without limitation all faxes indicating that 'the recipient is entitled to request that the sender not send any future advertisements to its telephone facsimile machines' or words to that effect." Plaintiff alleges that he received ***one*** fax in violation of the TCPA on or about April 23, 2018. *See* Compl. at ¶ 4. Discovery regarding any fax of a type differing from the exact fax attached to the Complaint as Exhibit A, *i.e.*, the one that he allegedly received on April 23, 2018, especially on the broad terms sought by Plaintiff for a period of over four years, and requiring the application of a legal conclusion that does not even apply to Exhibit A, is therefore plainly overbroad, unduly burdensome, seeks irrelevant information, and disproportional to the needs of the case because it would not be relevant to any party's claim or defense, as it does not concern any fax allegedly received by the Plaintiff. Moreover, the language regarding "future advertisements" has no relationship to or bearing or relevance on whether or not a document containing such language constitutes an advertisement, just as a contract whereby one party consents to receive "future advertisements" over the telephone or by fax is not itself an advertisement. Solstice will therefore limit its Responses to Requests containing this defined term – "Subject Fax" or "Subject Faxes" – to the facsimile transmission attached to the Complaint as Exhibit A and any other facsimile transmission stating the same language to any other person on or about the same date that Plaintiff alleges he received it.

Subject to and without waiver of the foregoing General and Specific objections, Solstice responds as follows: The Fax Message was sent by facsimile transmission to existing providers on Solstice's network and leased networks. Solstice is in the process of attempting to locate information that would confirm transmission four and a half years ago and will supplement if and when such information is located. Solstice believes, but does not know, that Westfax would have such information.

**7. For each Subject Fax transmitted or broadcast since April 17, 2018, identify each person with knowledge about its development, creation, or transmission, and state the general subject matter of the person's knowledge and involvement.**

**RESPONSE:** In addition to the General Objections, Solstice objects to this request on the grounds that the definition of "Subject Fax" is overly broad, unduly burdensome, vague, ambiguous, unintelligible, calls for a legal conclusion, seeks irrelevant information, and is disproportional to the needs of the case. Plaintiff attempts to include within the scope of the definition of "Subject Fax" "every fax Solstice sent . . . advertising the commercial availability or quality of any property, goods, or services, including without limitation all faxes indicating that 'the recipient is entitled to request that the sender not send any future advertisements to its telephone facsimile machines' or words to that effect." Plaintiff alleges that he received ***one*** fax in violation of the TCPA on or about April 23, 2018. *See* Compl. at ¶ 4. Discovery regarding any fax of a type differing from the exact fax attached

to the Complaint as Exhibit A, *i.e.*, the one that he allegedly received on April 23, 2018, especially on the broad terms sought by Plaintiff for a period of over four years, and requiring the application of a legal conclusion that does not even apply to Exhibit A, is therefore plainly overbroad, unduly burdensome, seeks irrelevant information, and disproportional to the needs of the case because it would not be relevant to any party's claim or defense, as it does not concern any fax allegedly received by the Plaintiff. Moreover, the language regarding "future advertisements" has no relationship to or bearing or relevance on whether or not a document containing such language constitutes an advertisement, just as a contract whereby one party consents to receive "future advertisements" over the telephone or by fax is not itself an advertisement. Solstice will therefore limit its Responses to Requests containing this defined term – "Subject Fax" or "Subject Faxes" – to the facsimile transmission attached to the Complaint as Exhibit A and any other facsimile transmission stating the same language to any other person on or about the same date that Plaintiff alleges he received it.

Subject to and without waiver of the foregoing General and Specific objections, Solstice responds as follows: Stacey Brocatto-McManus manages the Provider Relations team at Solstice, which is the team that wanted to inform the already existing providers within Solstice's network and leased networks of the existence of new members. Stacey Brocatto-McManus, Brian Correia, Esther

Felipe, and Sherri Irwin had involvement in the development and creation of the Fax Message. Westfax, a third-party vendor, was responsible for the transmission of the Fax Message.

**8. For each Subject Fax transmitted or broadcast since April 17, 2018, identify each person or entity involved in preparing documents or reports reflecting the success or failure of each fax transmission (whether a successful or failed transmission), including all persons and entities you believe may have possession, custody, or control of those documents or reports.**

**RESPONSE:** In addition to the General Objections, Solstice objects to this request on the grounds that the definition of "Subject Fax" is overly broad, unduly burdensome, vague, ambiguous, unintelligible, calls for a legal conclusion, seeks irrelevant information, and is disproportional to the needs of the case. Plaintiff attempts to include within the scope of the definition of "Subject Fax" "every fax Solstice sent . . . advertising the commercial availability or quality of any property, goods, or services, including without limitation all faxes indicating that 'the recipient is entitled to request that the sender not send any future advertisements to its telephone facsimile machines' or words to that effect." Plaintiff alleges that he received ***one*** fax in violation of the TCPA on or about April 23, 2018. *See* Compl. at ¶ 4. Discovery regarding any fax of a type differing from the exact fax attached to the Complaint as Exhibit A, *i.e.*, the one that he allegedly received on April 23, 2018, especially on the broad terms sought by Plaintiff for a period of over four years, and requiring the application of a legal conclusion that does not even apply to

Exhibit A, is therefore plainly overbroad, unduly burdensome, seeks irrelevant information, and disproportional to the needs of the case because it would not be relevant to any party's claim or defense, as it does not concern any fax allegedly received by the Plaintiff. Moreover, the language regarding "future advertisements" has no relationship to or bearing or relevance on whether or not a document containing such language constitutes an advertisement, just as a contract whereby one party consents to receive "future advertisements" over the telephone or by fax is not itself an advertisement. Solstice will therefore limit its Responses to Requests containing this defined term – "Subject Fax" or "Subject Faxes" – to the facsimile transmission attached to the Complaint as Exhibit A and any other facsimile transmission stating the same language to any other person on or about the same date that Plaintiff alleges he received it.

Subject to and without waiver of the foregoing General and Specific objections, Solstice responds as follows: Westfax.

**9. For each Subject Fax, identify the documents showing how many times it was sent (including successful and failed transmissions), to whom it was sent (including successful and failed transmissions), and state how and where such documents were or are maintained, and how and where such documents were received by you.**

**RESPONSE:** In addition to the General Objections, Solstice objects to this request on the grounds that the definition of "Subject Fax" is overly broad, unduly burdensome, vague, ambiguous, unintelligible, calls for a legal conclusion,

seeks irrelevant information, and is disproportional to the needs of the case. Plaintiff attempts to include within the scope of the definition of "Subject Fax" "every fax Solstice sent . . . advertising the commercial availability or quality of any property, goods, or services, including without limitation all faxes indicating that 'the recipient is entitled to request that the sender not send any future advertisements to its telephone facsimile machines' or words to that effect." Plaintiff alleges that he received ***one*** fax in violation of the TCPA on or about April 23, 2018. *See* Compl. at ¶ 4. Discovery regarding any fax of a type differing from the exact fax attached to the Complaint as Exhibit A, *i.e.*, the one that he allegedly received on April 23, 2018, especially on the broad terms sought by Plaintiff for a period of over four years, and requiring the application of a legal conclusion that does not even apply to Exhibit A, is therefore plainly overbroad, unduly burdensome, seeks irrelevant information, and disproportional to the needs of the case because it would not be relevant to any party's claim or defense, as it does not concern any fax allegedly received by the Plaintiff. Moreover, the language regarding "future advertisements" has no relationship to or bearing or relevance on whether or not a document containing such language constitutes an advertisement, just as a contract whereby one party consents to receive "future advertisements" over the telephone or by fax is not itself an advertisement. Solstice will therefore limit its Responses to Requests containing this defined term – "Subject Fax" or "Subject Faxes" – to the facsimile

transmission attached to the Complaint as Exhibit A and any other facsimile transmission stating the same language to any other person on or about the same date that Plaintiff alleges he received it.

Subject to and without waiver of the foregoing General and Specific objections, Solstice responds as follows: Solstice is in the process of attempting to locate information that would confirm transmission four and a half years ago and will supplement if and when such information is located. Solstice believes that Westfax would have such logs.

**10. Identify each person to whom a Subject Fax was sent, along with the contents of the Subject Fax, the number of times the Subject Fax was sent, the date(s) on which the Subject Fax was sent, and all documents identifying the same.**

**RESPONSE:** In addition to the General Objections, Solstice objects to this request on the grounds that the definition of "Subject Fax" is overly broad, unduly burdensome, vague, ambiguous, unintelligible, calls for a legal conclusion, seeks irrelevant information, and is disproportional to the needs of the case. Plaintiff attempts to include within the scope of the definition of "Subject Fax" "every fax Solstice sent . . . advertising the commercial availability or quality of any property, goods, or services, including without limitation all faxes indicating that 'the recipient is entitled to request that the sender not send any future advertisements to its telephone facsimile machines' or words to that effect." Plaintiff alleges that he received ***one*** fax in violation of the TCPA on or about April 23, 2018. *See* Compl.

at ¶ 4. Discovery regarding any fax of a type differing from the exact fax attached to the Complaint as Exhibit A, *i.e.*, the one that he allegedly received on April 23, 2018, especially on the broad terms sought by Plaintiff for a period of over four years, and requiring the application of a legal conclusion that does not even apply to Exhibit A, is therefore plainly overbroad, unduly burdensome, seeks irrelevant information, and disproportional to the needs of the case because it would not be relevant to any party's claim or defense, as it does not concern any fax allegedly received by the Plaintiff. Moreover, the language regarding "future advertisements" has no relationship to or bearing or relevance on whether or not a document containing such language constitutes an advertisement, just as a contract whereby one party consents to receive "future advertisements" over the telephone or by fax is not itself an advertisement. Solstice will therefore limit its Responses to Requests containing this defined term – "Subject Fax" or "Subject Faxes" – to the facsimile transmission attached to the Complaint as Exhibit A and any other facsimile transmission stating the same language to any other person on or about the same date that Plaintiff alleges he received it.

Subject to and without waiver of the foregoing General and Specific objections, Solstice responds as follows: The Fax Message was sent by facsimile transmission on April 23 and 24, 2018 to already existing providers on Solstice's network and leased networks. The contents of the Fax Message are the same as

those that appear in Exhibit A to the Complaint. The Fax Message was sent to the then-existing providers listed in the document attached hereto as Exhibit A. As the remainder of Solstice's answer may be determined by examining certain business records, and the burden of deriving or ascertaining the answer will be substantially the same for either party, pursuant to Federal Rule of Civil Procedure 33(d), Solstice will supplement this response to specify from its production the records responsive to this request.

**11. For each Subject Fax transmitted or broadcast since April 17, 2018, explain how you created or obtained the target list(s) of persons or facsimile numbers to which those Subject Faxes were sent, including Sources and the formats of the target list(s).**

**RESPONSE:** In addition to the General Objections, Solstice objects to this request on the grounds that the definition of "Subject Fax" is overly broad, unduly burdensome, vague, ambiguous, unintelligible, calls for a legal conclusion, seeks irrelevant information, and is disproportional to the needs of the case. Plaintiff attempts to include within the scope of the definition of "Subject Fax" "every fax Solstice sent . . . advertising the commercial availability or quality of any property, goods, or services, including without limitation all faxes indicating that 'the recipient is entitled to request that the sender not send any future advertisements to its telephone facsimile machines' or words to that effect." Plaintiff alleges that he received ***one*** fax in violation of the TCPA on or about April 23, 2018. *See* Compl. at ¶ 4. Discovery regarding any fax of a type differing from the exact fax attached

to the Complaint as Exhibit A, *i.e.*, the one that he allegedly received on April 23, 2018, especially on the broad terms sought by Plaintiff for a period of over four years, and requiring the application of a legal conclusion that does not even apply to Exhibit A, is therefore plainly overbroad, unduly burdensome, seeks irrelevant information, and disproportional to the needs of the case because it would not be relevant to any party's claim or defense, as it does not concern any fax allegedly received by the Plaintiff. Moreover, the language regarding "future advertisements" has no relationship to or bearing or relevance on whether or not a document containing such language constitutes an advertisement, just as a contract whereby one party consents to receive "future advertisements" over the telephone or by fax is not itself an advertisement. Solstice will therefore limit its Responses to Requests containing this defined term – "Subject Fax" or "Subject Faxes" – to the facsimile transmission attached to the Complaint as Exhibit A and any other facsimile transmission stating the same language to any other person on or about the same date that Plaintiff alleges he received it.

Subject to and without waiver of the foregoing General and Specific objections, Solstice responds as follows: The list of persons to whom the Fax Message was sent was created by compiling the list of already existing providers on Solstice's network and networks leased by Solstice through agreements with United

Concordia and PPO USA and the telephone numbers that those already existing providers had previously provided for the purpose of receiving fax messages.

**12. Identify each form or template of a Subject Fax you sent or caused to be sent by facsimile transmission, including the date(s) on which that Subject Fax was sent, and the numbers of persons and fax numbers to which the form or template was sent.**

**RESPONSE:** In addition to the General Objections, Solstice objects to this request on the grounds that the definition of "Subject Fax" is overly broad, unduly burdensome, vague, ambiguous, unintelligible, calls for a legal conclusion, seeks irrelevant information, and is disproportional to the needs of the case. Plaintiff attempts to include within the scope of the definition of "Subject Fax" "every fax Solstice sent . . . advertising the commercial availability or quality of any property, goods, or services, including without limitation all faxes indicating that 'the recipient is entitled to request that the sender not send any future advertisements to its telephone facsimile machines' or words to that effect." Plaintiff alleges that he received ***one*** fax in violation of the TCPA on or about April 23, 2018. *See* Compl. at ¶ 4. Discovery regarding any fax of a type differing from the exact fax attached to the Complaint as Exhibit A, *i.e.*, the one that he allegedly received on April 23, 2018, especially on the broad terms sought by Plaintiff for a period of over four years, and requiring the application of a legal conclusion that does not even apply to Exhibit A, is therefore plainly overbroad, unduly burdensome, seeks irrelevant information, and disproportional to the needs of the case because it would not be

relevant to any party's claim or defense, as it does not concern any fax allegedly received by the Plaintiff. Moreover, the language regarding "future advertisements" has no relationship to or bearing or relevance on whether or not a document containing such language constitutes an advertisement, just as a contract whereby one party consents to receive "future advertisements" over the telephone or by fax is not itself an advertisement. Solstice will therefore limit its Responses to Requests containing this defined term – "Subject Fax" or "Subject Faxes" – to the facsimile transmission attached to the Complaint as Exhibit A and any other facsimile transmission stating the same language to any other person on or about the same date that Plaintiff alleges he received it.

Solstice further objects to the Request on the grounds that it is vague, ambiguous, and unintelligible as to the meaning of "form or template," in particular in connection with the request to identify "the numbers of persons and fax numbers to which the form or template was sent." It is unclear in what way the "form or template" is distinct from the "Subject Fax" or, given Solstice's other objections, Fax Message, as only the Fax Message was sent by fax. In order to render this Request intelligible, and subject to Solstice's other asserted objections, Solstice interprets "form or template" to be co-extensive with "Subject Fax."

Subject to and without waiver of the foregoing General and Specific objections, Solstice responds as follows: See Interrogatory Response Nos. 9 and 10.

**13. Describe your relationship with Plaintiff, including:**

**(a) If you contend that you had an Established Business Relationship with Plaintiff, explain all circumstances surrounding the establishment of the EBR, identify each person involved in the creation of the EBR, all facts and documents supporting the existence of such an EBR, the date on which such EBR was formed, and each person involved in maintaining a log or other document reflecting such EBR.**

**(b) If you contend that you had Plaintiff's prior express invitation or permission to send an advertisement by facsimile, explain all circumstances surrounding your receipt of such prior express invitation or permission, including the identity of each person who you claim received prior express invitation or permission, each person with knowledge of obtaining prior express invitation or permission, all facts and documents supporting the existence of such prior express invitation or permission, and the date(s) that such invitation or permission was obtained.**

**RESPONSE:** Plaintiff was at the time of the Fax Message and still is a provider in United Concordia's network, which was leased to Solstice pursuant to a Network Access Agreement between Solstice Benefits, Inc. and United Concordia Companies, Inc. effective July 1, 2016. Among other things, the lease to Solstice allows Solstice's member groups and plans to utilize the providers in the United Concordia network. The Network Access Agreement also called for United Concordia to communicate to Plaintiff and other providers on its network about the lease and about Solstice's member groups and plans' access to providers on the United Concordia network, to which the provider could have refused in writing to participate. This notice was sent to Plaintiff in December 2016. Plaintiff did not

opt-out or otherwise refuse to participate upon being informed of this arrangement and, indeed, Plaintiff is still today identified as a provider available to Solstice's member groups and plans.

Furthermore, Plaintiff's Participating Dentist Agreement with United Concordia, dated December 3, 2009, provides that both United Concordia Companies, Inc. ("UCCI") and its affiliates are collectively referred to as "United Concordia" in the Participating Dentist Agreement. In Section 1(d) of that same agreement, "Dentist [Plaintiff] agrees to accept communications from United Concordia via mail, facsimile or e-mail at the addresses/numbers shown on Dentist's Credentialing Application." By signing the Participating Dentist Agreement, Plaintiff expressly gave his permission to be sent faxes from UCCI's affiliates. Solstice is an affiliate of UCCI, at least for purposes of the network in which the Plaintiff is a participating provider, by way of leasing UCCI's network.

Similarly, Section 2 of the Participating Dentist Agreement specifically states, "Dentist agrees to participate at all practice locations with all United Concordia Fee for Service Programs and in any other plan, program or arrangement for which United Concordia has agreed to provide access to the Network ('Network Access Arrangements'). Dentist specifically authorizes United Concordia to enter into Network Access Arrangements and agrees to provide services to members enrolled under any Network Access Arrangement, subject to all of the terms and conditions

of this Agreement. Dentist will comply with all policies and procedures governing the administration of United Concordia's Fee for Service Plans and all Network Access Arrangements, including but not limited to: claim submission, complaints, grievances, utilization review, and quality management . . . ." *Id.* Plaintiff knew that its dental practice's information would be disseminated to the Network's claims processors and payers, such as Solstice, in order for them to contact it; payers need to give providers notice of their policies and programs with which the providers are contractually bound to comply and participate.

**14. Did you have a practice or procedure to obtain prior express invitation or permission to send Subject Faxes? If so, please describe the practice or procedure, including the person(s) responsible for such practice or procedure.**

**RESPONSE:** In addition to the General Objections, Solstice objects to this request on the grounds that the definition of "Subject Fax" is overly broad, unduly burdensome, vague, ambiguous, unintelligible, calls for a legal conclusion, seeks irrelevant information, and is disproportional to the needs of the case. Plaintiff attempts to include within the scope of the definition of "Subject Fax" "every fax Solstice sent . . . advertising the commercial availability or quality of any property, goods, or services, including without limitation all faxes indicating that 'the recipient is entitled to request that the sender not send any future advertisements to its telephone facsimile machines' or words to that effect." Plaintiff alleges that he received ***one*** fax in violation of the TCPA on or about April 23, 2018. *See* Compl.

at ¶ 4. Discovery regarding any fax of a type differing from the exact fax attached to the Complaint as Exhibit A, *i.e.*, the one that he allegedly received on April 23, 2018, especially on the broad terms sought by Plaintiff for a period of over four years, and requiring the application of a legal conclusion that does not even apply to Exhibit A, is therefore plainly overbroad, unduly burdensome, seeks irrelevant information, and disproportional to the needs of the case because it would not be relevant to any party's claim or defense, as it does not concern any fax allegedly received by the Plaintiff. Moreover, the language regarding "future advertisements" has no relationship to or bearing or relevance on whether or not a document containing such language constitutes an advertisement, just as a contract whereby one party consents to receive "future advertisements" over the telephone or by fax is not itself an advertisement. Solstice will therefore limit its Responses to Requests containing this defined term – "Subject Fax" or "Subject Faxes" – to the facsimile transmission attached to the Complaint as Exhibit A and any other facsimile transmission stating the same language to any other person on or about the same date that Plaintiff alleges he received it.

Subject to and without waiver of the foregoing General and Specific objections, Solstice responds as follows: Solstice has the ability to lawfully communicate with providers via fax based on its relationships and agreements with the recipients, here existing dental care providers on Solstice's network and

networks leased by Solstice through agreements with United Concordia and PPO USA, or through the network access agreements/leases with United Concordia and PPO USA, as well established business relationships with providers, including but not limited through claims submission and processing.

**15. If you obtained prior express invitation or permission to send a Subject Fax to any person or entity, (a) identify each such person or entity by name, address, fax number, telephone number, and date of invitation or permission, (b) explain the facts and circumstances of obtaining their express invitation or permission, (c) identify each person with knowledge of that express invitation or permission, and (d) identify each person involved in maintaining a log or other record of that express invitation or permission.**

**RESPONSE:** In addition to the General Objections, Solstice objects to this request on the grounds that the definition of "Subject Fax" is overly broad, unduly burdensome, vague, ambiguous, unintelligible, calls for a legal conclusion, seeks irrelevant information, and is disproportional to the needs of the case, including with respect to identifying the facts and circumstances of every single person who gave invitation, permission, or consent to receive the Fax Message and each person with knowledge thereof. Responding with the requested specifics for each relevant person is plainly unduly burdensome and disproportional to the needs of the case (given the significant number of such persons and the identical forms or documents) when exemplars and, if necessary, representative samples will be sufficient. Furthermore, Plaintiff attempts to include within the scope of the definition of "Subject Fax" "every fax Solstice sent . . . advertising the commercial

availability or quality of any property, goods, or services, including without limitation all faxes indicating that 'the recipient is entitled to request that the sender not send any future advertisements to its telephone facsimile machines' or words to that effect." Plaintiff alleges that he received ***one*** fax in violation of the TCPA on or about April 23, 2018. *See* Compl. at ¶ 4. Discovery regarding any fax of a type differing from the exact fax attached to the Complaint as Exhibit A, *i.e.*, the one that he allegedly received on April 23, 2018, especially on the broad terms sought by Plaintiff for a period of over four years, and requiring the application of a legal conclusion that does not even apply to Exhibit A, is therefore plainly overbroad, unduly burdensome, seeks irrelevant information, and disproportional to the needs of the case because it would not be relevant to any party's claim or defense, as it does not concern any fax allegedly received by the Plaintiff. Moreover, the language regarding "future advertisements" has no relationship to or bearing or relevance on whether or not a document containing such language constitutes an advertisement, just as a contract whereby one party consents to receive "future advertisements" over the telephone or by fax is not itself an advertisement. Solstice will therefore limit its Responses to Requests containing this defined term – "Subject Fax" or "Subject Faxes" – to the facsimile transmission attached to the Complaint as Exhibit A and any other facsimile transmission stating the same language to any other person on or about the same date that Plaintiff alleges he received it.

Solstice further objects to this Request on the grounds that it is overbroad, unduly burdensome, vague, ambiguous, and disproportionate to the needs of the case to the extent it asks for an identification of each person involving in maintaining a log or other record of express invitation or permission. It is not entirely clear what is being sought when, as here, the express invitation or permission is based upon direct agreements with persons on Solstice's network or through agreements with other carriers, and therefore Solstice is unable to respond to this aspect of the request.

Subject to and without waiver of the foregoing General and Specific objections, Solstice responds as follows: Solstice has the ability to lawfully communicate with providers via fax based on its relationships and agreements with the recipients, here existing dental care providers on Solstice's network and networks leased by Solstice through agreements with United Concordia and PPO USA, or through the network access agreements/leases with United Concordia and PPO USA, as well established business relationships with providers, including but not limited through claims submission and processing. Ascertaining all of this information would require an analysis of each network, the information provided and forms signed by providers, and the differing and unique circumstances of those relationships with Solstice, and it would be unduly burdensome and disproportional to the needs of the case to require specifics for each relevant person when exemplars and, if necessary, representative samples will be sufficient. Persons with knowledge

of the providers within said networks would be within the Provider Relations Team headed by Stacey Brocatto-McManus. As the remainder of Solstice's answer may be determined by examining certain business records subject to and as limited by the foregoing objections, and the burden of deriving or ascertaining the answer will be substantially the same for either party, pursuant to Federal Rule of Civil Procedure 33(d), Solstice will supplement this response to specify from its production the records responsive to this request.

**16. If you had an EBR with any person sent one of the Subject Faxes, (a) identify each such person by name, address, fax number, telephone number, and date of your established business relationship, (b) describe your relationship with the person, (c) identify the person with knowledge of that established business relationship, and (d) identify each person involved in maintaining a log or other record of that established business relationship.**

**RESPONSE:** In addition to the General Objections, Solstice objects to this request on the grounds that the definition of "Subject Fax" is overly broad, unduly burdensome, vague, ambiguous, unintelligible, calls for a legal conclusion, seeks irrelevant information, and is disproportional to the needs of the case. Responding with the requested specifics for each relevant person is plainly unduly burdensome and disproportional to the needs of the case (given the significant number of such persons and the identical forms or documents) when exemplars and, if necessary, representative samples will be sufficient. Furthermore, Plaintiff attempts to include within the scope of the definition of "Subject Fax" "every fax Solstice sent . . . advertising the commercial availability or quality of any property,

goods, or services, including without limitation all faxes indicating that 'the recipient is entitled to request that the sender not send any future advertisements to its telephone facsimile machines' or words to that effect." Plaintiff alleges that he received ***one*** fax in violation of the TCPA on or about April 23, 2018. *See* Compl. at ¶ 4. Discovery regarding any fax of a type differing from the exact fax attached to the Complaint as Exhibit A, *i.e.*, the one that he allegedly received on April 23, 2018, especially on the broad terms sought by Plaintiff for a period of over four years, and requiring the application of a legal conclusion that does not even apply to Exhibit A, is therefore plainly overbroad, unduly burdensome, seeks irrelevant information, and disproportional to the needs of the case because it would not be relevant to any party's claim or defense, as it does not concern any fax allegedly received by the Plaintiff. Moreover, the language regarding "future advertisements" has no relationship to or bearing or relevance on whether or not a document containing such language constitutes an advertisement, just as a contract whereby one party consents to receive "future advertisements" over the telephone or by fax is not itself an advertisement. Solstice will therefore limit its Responses to Requests containing this defined term – "Subject Fax" or "Subject Faxes" – to the facsimile transmission attached to the Complaint as Exhibit A and any other facsimile transmission stating the same language to any other person on or about the same date that Plaintiff alleges he received it.

Solstice further objects to this Request on the grounds that it is overbroad, unduly burdensome, vague, ambiguous, and disproportionate to the needs of the case to the extent it asks for an identification of each person involving in maintaining a log or other record of established business relationship. It is not entirely clear what is being sought when, as here, the established business relationship is in part based upon direct agreements with persons on Solstice's network or through agreements with other carriers, and therefore Solstice is unable to respond to this aspect of the request.

Subject to and without waiver of the foregoing General and Specific objections, Solstice responds as follows: Solstice had an established business relationship with the recipients of the Fax Message, here already existing dental care providers on Solstice's network and networks leased by Solstice through agreements with United Concordia and PPO USA, or through the network access agreements/leases with United Concordia and PPO USA. Established business relationships also occurred through voluntary two-way communications between Solstice and a provider based on claims submission and processing or an inquiry regarding Solstice's plans or services. Ascertaining all of this information would require an analysis of each network, the information provided and forms signed by providers, and the differing and unique circumstances of those relationships with Solstice, and it would be unduly burdensome and disproportional to the needs of the

case to require specifics for each relevant person when exemplars and, if necessary, representative samples will be sufficient. Persons with knowledge of the providers within said networks would be within the Provider Relations Team headed by Stacey Brocatto-McManus. As the remainder of Solstice's answer may be determined by examining certain business records subject to and as limited by the foregoing objections, and the burden of deriving or ascertaining the answer will be substantially the same for either party, pursuant to Federal Rule of Civil Procedure 33(d), Solstice will supplement this response to specify from its production the records responsive to this request.

**17. Identify each person who, at any time after April 17, 2018, requested that you not send future advertisements to their fax machine, including all information provided by the requester, how they submitted the request(s), the date(s) of their request(s), the persons or entities involved in handling or responding to their request(s), and any documents relating to same.**

**RESPONSE:** In addition to the General Objections, Solstice objects to this request on the grounds that it is overly broad, unduly burdensome, seeks irrelevant information, and is disproportional to the needs of the case to the extent it is not limited to persons who did not receive the Fax Message. Discovery regarding any fax of a type differing from the exact fax attached to the Complaint as Exhibit A, *i.e.*, the one that Plaintiff allegedly received on April 23, 2018, especially on the broad terms sought by Plaintiff for a period of over four years, is overbroad, unduly burdensome, seeks irrelevant information, and disproportional to the needs of the

case because it would not be relevant to any party's claim or defense, as it does not concern any fax allegedly received by the Plaintiff. Solstice will therefore limit its Responses to this Request to persons who received the facsimile transmission attached to the Complaint as Exhibit A and any other facsimile transmission stating the same language to any other person on or about the same date that Plaintiff alleges he received it.

Subject to and without waiver of the foregoing General and Specific objections, Solstice responds as follows: Solstice presently has no knowledge of any persons who received the Fax Message and requested not to receive any advertisements to their fax machine in the future.

**18. Identify each of the following entities referred to in the Subject Fax attached as Exhibit A to the Class Action Complaint and explain your relationship to each:**

**a. The National Association for Medical and Dental, Inc.**
**b. Healthcare National Marketing, Inc.**
**c. Solstice PPO.**
**d. DHMO-500B.**
**e. Discount Plan-Plus Plan One.**
**f. Discount Plan-Plus Plan Complete.**

**RESPONSE:** The National Association for Medical and Dental, Inc. and Healthcare National Marketing, Inc. are two companies that offer dental insurance plans. According to filings with the Florida Department of State, Division of Corporations, they are both located at 5396 School Road, New Port Richey, Florida 34652. Their members are able to utilize Solstice's plans and provider networks

through agreements with Solstice. Solstice PPO, DHMO-500B, Discount Plan-Plus Plan One, and Discount Plan-Plus Plan Complete are not entities. These are dental insurance plans offered by Solstice.

**19. Describe the function of the Dedicated Provider Relations Team and its members from March 2018 to present.**

**RESPONSE:** Solstice objects to this request on the grounds that it is overbroad, unduly burdensome, and irrelevant. As discussed in Solstice's General Objections, the only fax at issue in this case given the allegations in Plaintiff's Complaint is the fax Plaintiff alleges was sent to him on April 23, 2018. Accordingly, any description of "the function of the Dedicated Provider Relations Team and its members from March 2018 to present" would be irrelevant to the extent it seeks information outside the scope of April 2018, as that is the only relevant timeframe at issue in the Complaint.

Subject to and without waiver of the foregoing General and Specific Objections, Solstice responds as follows: The "Dedicated Provider Relations Team" refers to Solstice's Provider Relations department. This department handles relationships with providers, including but not limited to inquiries about plan members and eligibility verification, plan benefits, and claims, in large part to facilitate that providers receive payment for covered dental care that they provide to plan members. The department's members are employees of Solstice who work in this department and handle these responsibilities.

**20. Before sending the Subject Fax attached as Exhibit A to the Class Action Complaint, did you make any effort to determine whether any person on the target list was "a contracted provider for one or all plans" identified in the fax? If so, please describe the steps you took to do so, and identify the persons involved in doing so.**

**RESPONSE:** In addition to the General Objections, Solstice objects to this request on the grounds that the definition of "Subject Fax" is overly broad, unduly burdensome, vague, ambiguous, unintelligible, calls for a legal conclusion, seeks irrelevant information, and is disproportional to the needs of the case. Plaintiff attempts to include within the scope of the definition of "Subject Fax" "every fax Solstice sent . . . advertising the commercial availability or quality of any property, goods, or services, including without limitation all faxes indicating that 'the recipient is entitled to request that the sender not send any future advertisements to its telephone facsimile machines' or words to that effect." Plaintiff alleges that he received ***one*** fax in violation of the TCPA on or about April 23, 2018. *See* Compl. at ¶ 4. Discovery regarding any fax of a type differing from the exact fax attached to the Complaint as Exhibit A, *i.e.*, the one that he allegedly received on April 23, 2018, especially on the broad terms sought by Plaintiff for a period of over four years, and requiring the application of a legal conclusion that does not even apply to Exhibit A, is therefore plainly overbroad, unduly burdensome, seeks irrelevant information, and disproportional to the needs of the case because it would not be relevant to any party's claim or defense, as it does not concern any fax allegedly

received by the Plaintiff. Moreover, the language regarding "future advertisements" has no relationship to or bearing or relevance on whether or not a document containing such language constitutes an advertisement, just as a contract whereby one party consents to receive "future advertisements" over the telephone or by fax is not itself an advertisement. Solstice will therefore limit its Responses to Requests containing this defined term – "Subject Fax" or "Subject Faxes" – to the facsimile transmission attached to the Complaint as Exhibit A and any other facsimile transmission stating the same language to any other person on or about the same date that Plaintiff alleges he received it.

Subject to and without waiver of the foregoing General and Specific objections, Solstice responds as follows: Yes. The list of persons to whom the Fax Message was sent was created by compiling a list of already existing providers on Solstice's network and networks leased by Solstice through agreements with United Concordia and PPO USA and the telephone numbers that those existing providers had previously submitted for the purpose of receiving fax messages. Members of the Provider Relations Department were involved in that effort, but Solstice is unable to identify which employees in particular.

**21. Identify each doctor to whom Solstice sent or caused to be sent each Subject Fax, including whether the doctor was directly contracted with Solstice or a member of the Solstice provider network at that time.**

**RESPONSE:** In addition to the General Objections, Solstice objects to this request on the grounds that the definition of "Subject Fax" is overly broad, unduly burdensome, vague, ambiguous, unintelligible, calls for a legal conclusion, seeks irrelevant information, and is disproportional to the needs of the case. Plaintiff attempts to include within the scope of the definition of "Subject Fax" "every fax Solstice sent . . . advertising the commercial availability or quality of any property, goods, or services, including without limitation all faxes indicating that 'the recipient is entitled to request that the sender not send any future advertisements to its telephone facsimile machines' or words to that effect." Plaintiff alleges that he received ***one*** fax in violation of the TCPA on or about April 23, 2018. *See* Compl. at ¶ 4. Discovery regarding any fax of a type differing from the exact fax attached to the Complaint as Exhibit A, *i.e.*, the one that he allegedly received on April 23, 2018, especially on the broad terms sought by Plaintiff for a period of over four years, and requiring the application of a legal conclusion that does not even apply to Exhibit A, is therefore plainly overbroad, unduly burdensome, seeks irrelevant information, and disproportional to the needs of the case because it would not be relevant to any party's claim or defense, as it does not concern any fax allegedly received by the Plaintiff. Moreover, the language regarding "future advertisements" has no relationship to or bearing or relevance on whether or not a document containing such language constitutes an advertisement, just as a contract whereby

one party consents to receive "future advertisements" over the telephone or by fax is not itself an advertisement. Solstice will therefore limit its Responses to Requests containing this defined term – "Subject Fax" or "Subject Faxes" – to the facsimile transmission attached to the Complaint as Exhibit A and any other facsimile transmission stating the same language to any other person on or about the same date that Plaintiff alleges he received it.

Subject to and without waiver of the foregoing General and Specific objections, Solstice responds as follows: All recipients of the Fax Message were already existing providers on Solstice's network or networks leased by Solstice through agreements with United Concordia and PPO USA. As the remainder of Solstice's answer may be determined by examining certain business records subject to and as limited by the foregoing objections, and the burden of deriving or ascertaining the answer will be substantially the same for either party, pursuant to Federal Rule of Civil Procedure 33(d), Solstice will supplement this response to specify from its production the records responsive to this request.

**22. When and by whom was the paragraph beginning "The recipient is entitled to request..." at the bottom of the Subject Fax attached to the Class Action Complaint as Exhibit A (ECF 1-1, p. 2) first drafted, and if it was modified from one Subject Fax template to another, when and by whom it was modified."**

**RESPONSE:** In addition to the General Objections, Solstice objects to this request on the grounds that the definition of "Subject Fax" is overly broad,

unduly burdensome, vague, ambiguous, unintelligible, calls for a legal conclusion, seeks irrelevant information, and is disproportional to the needs of the case. Plaintiff attempts to include within the scope of the definition of "Subject Fax" "every fax Solstice sent . . . advertising the commercial availability or quality of any property, goods, or services, including without limitation all faxes indicating that 'the recipient is entitled to request that the sender not send any future advertisements to its telephone facsimile machines' or words to that effect." Plaintiff alleges that he received ***one*** fax in violation of the TCPA on or about April 23, 2018. *See* Compl. at ¶ 4. Discovery regarding any fax of a type differing from the exact fax attached to the Complaint as Exhibit A, *i.e.*, the one that he allegedly received on April 23, 2018, especially on the broad terms sought by Plaintiff for a period of over four years, and requiring the application of a legal conclusion that does not even apply to Exhibit A, is therefore plainly overbroad, unduly burdensome, seeks irrelevant information, and disproportional to the needs of the case because it would not be relevant to any party's claim or defense, as it does not concern any fax allegedly received by the Plaintiff. Moreover, the language regarding "future advertisements" has no relationship to or bearing or relevance on whether or not a document containing such language constitutes an advertisement, just as a contract whereby one party consents to receive "future advertisements" over the telephone or by fax is not itself an advertisement. Solstice will therefore limit its Responses to Requests

containing this defined term – "Subject Fax" or "Subject Faxes" – to the facsimile transmission attached to the Complaint as Exhibit A and any other facsimile transmission stating the same language to any other person on or about the same date that Plaintiff alleges he received it.

Subject to and without waiver of the foregoing General and Specific objections, Solstice responds as follows: At some point after submission of the Fax Message to Westfax but before transmission, Westfax drafted and included the paragraph beginning "The recipient is entitled to request . . ." at the bottom of the Fax Message.

**23. Describe in detail your contentions that an agreement between Solstice and United Concordia authorized, permitted, or contemplated the sending of the document attached as Exhibit A to the Class Action Complaint to Plaintiff by facsimile transmission.**

**RESPONSE:** Plaintiff was at the time of the Fax Message and still is a provider in United Concordia's network, which was leased to Solstice pursuant to a Network Access Agreement between Solstice Benefits, Inc. and United Concordia Companies, Inc. effective July 1, 2016. Among other things, the lease to Solstice allows Solstice's member groups and plans to utilize the providers in the United Concordia network. The Network Access Agreement also called for United Concordia to communicate to Plaintiff and other providers on its network about the lease and about Solstice's member groups and plans' access to providers on the United Concordia network, to which the provider could have refused in writing to

participate. This notice was sent to Plaintiff in December 2016. Plaintiff did not opt-out or otherwise refuse to participate upon being informed of this arrangement and, indeed, Plaintiff is still today identified as a provider available to Solstice's member groups and plans.

Furthermore, Plaintiff's Participating Dentist Agreement with United Concordia, dated December 3, 2009, provides that both United Concordia Companies, Inc. ("UCCI") and its affiliates are collectively referred to as "United Concordia" in the Participating Dentist Agreement. In Section 1(d) of that same agreement, "Dentist [Plaintiff] agrees to accept communications from United Concordia via mail, facsimile or e-mail at the addresses/numbers shown on Dentist's Credentialing Application." By signing the Participating Dentist Agreement, Plaintiff expressly gave his permission to be sent faxes from UCCI's affiliates. Solstice is an affiliate of UCCI, at least for purposes of the network in which the Plaintiff is a participating provider, by way of leasing UCCI's network.

Similarly, Section 2 of the Participating Dentist Agreement specifically states, "Dentist agrees to participate at all practice locations with all United Concordia Fee for Service Programs and in any other plan, program or arrangement for which United Concordia has agreed to provide access to the Network ('Network Access Arrangements'). Dentist specifically authorizes United Concordia to enter into Network Access Arrangements and agrees to provide services to members enrolled

under any Network Access Arrangement, subject to all of the terms and conditions of this Agreement. Dentist will comply with all policies and procedures governing the administration of United Concordia's Fee for Service Plans and all Network Access Arrangements, including but not limited to: claim submission, complaints, grievances, utilization review, and quality management . . . ." *Id.* Plaintiff knew that its dental practice's information would be disseminated to the Network's claims processors and payers, such as Solstice, in order for them to contact it; payers need to give providers notice of their policies and programs with which the providers are contractually bound to comply and participate.

**24. Identify all steps by which a provider could "create an account" at Mysolstice.net in April 2018, including identifying the documents to be completed or created and all applicable terms or conditions.**

**RESPONSE:** As Solstice's answer may be determined by examining certain business records, and the burden of deriving or ascertaining the answer will be substantially the same for either party, pursuant to Federal Rule of Civil Procedure 33(d), Solstice refers Plaintiff to the document from its production bearing Bates numbers SOLSTICE000047-SOLSTICE000052.

**VERIFICATION**

SOLSTICE BENEFITS, INC.

______________________________

By:____________________________

As Its:__________________________

STATE OF FLORIDA )
) ss:
COUNTY OF ____________ )

BEFORE ME the undersigned officer, authorized to administer oaths and take acknowledgments, personally appeared __________________________, as ____________________________ for Solstice Benefits, Inc., who after being duly sworn, deposes and says that the answers to the above and foregoing Interrogatories are true and correct to the best of ☐ his ☐ her knowledge and belief.

SWORN TO AND SUBSCRIBED before me this _____ day of ________, 2022.

NOTARY PUBLIC
STATE OF FLORIDA AT LARGE

[SEAL]

________________________________
Signature of Notary Public

________________________________
Typed/Printed Name of Notary Public

My Commission Expires:___________

☐ Personally Known OR
☐ Produced Identification
☐ Type of Identification Produced: ___________________________

Dated: October 24, 2022

GREENSPOON MARDER LLP

*/s/ Roy Taub*
Jeffrey A. Backman
Roy Taub
200 East Broward Blvd., Suite 1800
Fort Lauderdale, Florida 33301
954.491.1120 (Telephone)
954.343.6958 (Facsimile)
jeffrey.backman@gmlaw.com
roy.taub@gmlaw.com

SMITH HAUGHEY RICE & ROEGGE, PC
Kristen E. Guinn
100 Monroe Center NW
Grand Rapids, MI 49503
(616) 458-6245 (Telephone)
(616) 774-2461 (Facsimile)
kguinn@shrr.com

*Attorneys for Defendant*
*Solstice Benefits, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all counsel of record via e-mail on October 24, 2022.

By: */s/ Roy Taub*
ROY TAUB

**VERIFICATION**

SOLSTICE BENEFITS, INC.

By: LEONARD WEISS
As Its: CEO/DIRECTOR

STATE OF FLORIDA )
) ss:
COUNTY OF Broward )

BEFORE ME the undersigned officer, authorized to administer oaths and take acknowledgments, personally appeared Leonard Weiss, as Director for Solstice Benefits, Inc., who after being duly sworn, deposes and says that the answers to Plaintiff's First Set of Interrogatories, which answers were served on October 24, 2022, are true and correct to the best of ☑ his ☐ her knowledge and belief.

SWORN TO AND SUBSCRIBED before me this 22 day of May, 2023.

NOTARY PUBLIC
STATE OF FLORIDA AT LARGE

[SEAL]

Signature of Notary Public

Typed/Printed Name of Notary Public

My Commission Expires:

MARK FEINSTEIN
Commission # GG 928507
Expires March 1, 2024
Bonded Thru Troy Fain Insurance 800-385-7019

☑ Personally Known OR
☐ Produced Identification
☐ Type of Identification Produced: ______________